UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ – Civ – (Judge _____)



2007 SEP 24  PM 2:02

**07-22502
CIV-HOEVELER
MAGISTRATE JUDGE
BROWN**

RANDALL VANESSA FORBES,

    Plaintiff,

vs.

ST. THOMAS UNIVERSITY INC.,   **COMPLAINT**

    Defendant
_____/

## JURISDICTION

Plaintiff bases jurisdiction on Federal Question 28 USC §1331; Jurisdiction arises under federal statutes and regulations including without limitation, the Americans with Disabilities Act, 42 U.S.C. § 12102, the Rehabilitation Act of 1973, 29 U.S.C. §794, and the Racketeering Influence and Corrupt Organizations Act, 18 U.S.C. § 1962.

## PARTIES

1. At all times mentioned herein, Plaintiff, Randall Vanessa Forbes (Plaintiff), locally resides at 8788 SW 12th Street, Apartment 204F Miami FL 33174 Miami- Dade County, State of Florida.

2. At all times mentioned herein, Plaintiff, Randall Vanessa Forbes (Plaintiff) permanently resides at 122 North Brookside Avenue Freeport, New York 11520. Nassau County, State of New York.

3. The campus of Defendant is located at 16401 N.W. 37th Avenue Miami Gardens, Miami- Dade County, State of Florida.

## FACTUAL ALLEGATIONS

4. Plaintiff applied to St. Thomas University in or around January 2006 and was placed on the waitlist. In or around the spring of 2006, Plaintiff was taken off the waitlist and admitted by the Defendant.

5. At all relevant times, Plaintiff did avail herself of a federally approved student loan program.

6. Plaintiff matriculated at Defendant, St. Thomas University School of Law as a first year student commencing August 2006. Plaintiff was dismissed from Defendant, St. Thomas University School of Law in May 2007, for alleged failure to maintain a cumulative grade point average of 2.0. Plaintiff did appeal the dismissal to Defendant in written form, on June 1, 2007 and appeared for a personal hearing on June 6, 2007; the petition was denied on June 7, 2007.

7. Defendant did not have a conditional summer program available during the summer of 2006, the summer before the 2006-2007 academic school year. Defendant did have a conditional summer program the previous summer before the 2005- 2006 school year. Those students that were admitted to the summer conditional program paid a fee and were required to pass certain courses in order to be admitted.

8. Prior to being admitted, Plaintiff did express a willingness to participate in the summer conditional program.

9. At all relevant times, Rev. Msgr. Franklyn M. Casale was and is the President of Defendant.

10. At all relevant times since the departure of Mr. Robert Butterworth, Mr. Alfredo García was and is employed by the Defendant as the Dean of the Law School and Professor of Law.

11. At all relevant times, Mr. John F. Hernández ("Hernandez") was and is employed by the Defendant as the Assistant Dean for Student Affairs and Visiting Associate Professor of Law. As the Dean of Student Affairs, Hernandez has the duty to, *inter alia*, "evaluate and facilitate accommodations for those students seeking disability accommodations, serve as the liaison for law students with the University's business, financial aid and campus housing offices, provide academic and course counseling to students, approve scheduling changes, overload request, request for leaves of absence and otherwise work with students who need guidance with regard to course selections."

12. At all relevant times, Ms. Catherine Hayes-Cohen was and is employed by the Defendant as the Development Coordinator, Law Student Affairs.

13. At all relevant times, Ms. Cecile Dykas was and is employed by the Defendant as the Associate Dean for Academic Affairs, Director of Clinical Programs, and Visiting Assistant Professor and served as the Chair of the Academic Standing Committee for Plaintiff.

14. At all relevant times, Dr. Joseph Gisondo ("Dr. Gisondo") was employed by the Defendant as the Director of Counseling Services until his departure in or around April 2007.

15. At all relevant times, Ms. Fareza Khan was and is employed by the Defendant as the Director of Admissions for the School of Law.

16. At all relevant times, Ms. Barbara Singer was and is employed by the Defendant as the Assistant Dean of Academic Support and Visiting Associate Professor of Law and was the property professor for Plaintiff.

17. At all relevant times, Ms. Sarah Blacher was and is employed by the Defendant as the Coordinator, Law Academic Support.

18. At all relevant times, Mr. Daniel Gordon was the civil procedure professor for Plaintiff.

19. At all relevant times, Mr. John Makdisi was the contracts professor for Plaintiff.

20. At all relevant times, Mr. Jay Silver was the torts professor for Plaintiff and was and is a member of the Academic Standing Committee.

21. At all relevant times, Mr. Peter Kelly was and is employed by the Defendant as Director of Support Services.

22. At all relevant times, Ms. Brenda Melville was and is employed by Defendant as the Campus Nurse, Health Services.

23. At all relevant times, Mr. Isaac Carter was and is employed by Defendant as the Interim Director, Campus Life.

24. At all relevant times, Dr. Beatriz Robinson was and is employed by Defendant as the Vice President, Planning & Enrollment.

25. In or around October 2007, Plaintiff asked the Academic Support Services for tutors in the first semester and was told that no one could receive a tutor in the first semester, first year which is not reflected in either the Student Handbook and Student Catalog.

26. Plaintiff took the following courses and received the following grades during the first semester, first year with resulting grade-point average at Defendant, St. Thomas University School of Law:

| | | |
|---|---|---|
| Civil Procedure I- | (3 credits) | B |
| Contracts I- | (3 credits) | F |
| Torts I- | (3 credits) | C |
| Property I- | (3 credits) | D |

      Legal Analysis Research and Writing –   (3 credits)   C+
      Semester Grade Point Average………………………………………..1.7

27. Plaintiff, based upon a grade point average of less than 2.0, was placed on academic probation after the first semester, first-year.

28. At all relevant times, Defendant normally conducts business with its students via email among other forms of communication.

29. In or around January 2007, first year law students were informed that there was a new policy requiring that second semester examinations were to be cumulative.

30. In or around January 2007, Plaintiff requested three tutors from Academic Support Services. Plaintiff requested a tutor for contracts, property, and torts.

31. Out of the three tutors requested, Plaintiff received only one for property.

32. Plaintiff was told by Barbara Singer and Sarah Blacher that her contracts professor, John Makdisi, did not allow his pupils to receive tutors.

33. In or around January 2007, prior to the end of the add/drop period, Plaintiff met with Barbara Singer. Plaintiff verbally requested and filled out the drop/add form to drop either Contracts II or Advanced Legal Writing.

34. Plaintiff was told by Barbara Singer that the latter called Hernandez to ascertain whether Plaintiff could drop either course.

35. Plaintiff was present when Barbara Singer used the phone allegedly to call Hernandez.

36. Plaintiff was told by Barbara Singer she would not be able to drop either class.

37. Plaintiff suffers from a psychological disability known as Post Traumatic Stress Disorder (PTSD). At all relevant times, Plaintiff was and is suffering from symptoms consistent with Post Traumatic Stress Disorder (PTSD).

38. In January 2007, Plaintiff met with Hernandez to discuss, *inter alia*, receiving special accommodations for the second semester, first-year.

39. During that meeting, Plaintiff described her financial status, what accommodations she would need and what documentation she had, and the procedure by which the University of Miami provided accommodations.

40. As a result of the meeting with Hernandez in January 2007, Plaintiff was told by Hernandez she was to receive special accommodations for the second semester, specifically, time and a half on exams and an isolated separate testing location.

      Plaintiff was to return to go over the details just before the first examination. Plaintiff was additionally asked to provide documentation in the event "someone" asked for documentation of her disability.

41. At all relevant times, Plaintiff was never made aware of who would ask for documentation of her disability but was told by Hernandez that whether a student receives accommodations is in the sole discretion of Hernandez.

42. At all relevant times, Plaintiff was not given a specific date as to when documentation was to be provided to Hernandez.

43. The agreement between Hernandez and the Plaintiff regarding accommodations was not contingent on Plaintiff providing documentation.

44. During the meeting with Hernandez, Plaintiff inquired as to how to receive additional accommodations and if there was a pamphlet available. Plaintiff was told by Hernandez to meet with Dr. Joseph Gisondo for testing.

45. During the January meeting with Hernandez, Plaintiff inquired as to what type of testing would be adequate, and was told to ask Dr. Gisondo. At that time, Hernandez made no mention of the Disability Guidelines Handbook. Despite Plaintiff's inquiries, Hernandez failed to mention and make the Disabilities Guidelines Handbook available to the Plaintiff at that time.

46. Plaintiff met with Dr. Gisondo in or around March for testing. Plaintiff was told by Dr. Gisondo during that meeting that testing was not available at the University, but would seek appropriate testing outside of the school on the Plaintiff's behalf. Plaintiff was asked to allow a couple weeks time so that Dr. Gisondo would be able to find the appropriate medical professional.

47. Plaintiff signed two release forms for Dr. Gisondo to speak with outside medical professionals to obtain appropriate testing and to speak with Hernandez.

48. During the meeting with Dr. Gisondo, Plaintiff inquired as to what type of testing would be adequate and was told to ask Hernandez. Plaintiff told Dr. Gisondo that Hernandez told her to ask Dr. Gisondo. Dr. Gisondo failed to mention and make the Disabilities Guidelines Handbook available to Plaintiff.

49. Dr. Gisondo failed to contact Plaintiff again. Plaintiff called several weeks later only to find out that Dr. Gisondo was no longer employed by the Defendant and there was no replacement at that time.

50. Plaintiff was not provided with a reference for an appropriate doctor and was hindered from obtaining her own doctor for testing by Defendant's failure to adequately respond to Plaintiff's inquiries as described in paragraphs 45 and 48.

51. In or around March or April 2007, Plaintiff complained of chest pains. The ambulance was called on Plaintiff's behalf.

52. Plaintiff emailed the documentation from the University of Miami regarding her disability to Hernandez in or around April 2007.

53. Plaintiff did not receive a response from Hernandez but emailed Ms. Cathy Hayes, the secretary for Hernandez, to schedule an appointment with Hernandez.

54. Plaintiff met with Hernandez again in April to discuss the testing accommodations and redirected his attention to the email. Plaintiff witnessed Hernandez print and reread the email. During the April meeting, Hernandez referred to that ambulance visit. Hernandez expressed an unwillingness to give Plaintiff accommodations until Plaintiff threatened to withdraw for a semester. After Plaintiff expressed a desire to withdraw, Hernandez did give Plaintiff partial accommodations. The partial accommodations given were not as agreed to at the January meeting. Hernandez denied Plaintiff full accommodations based upon the ambulance incident.

55. Hernandez did not inform Plaintiff of her options, procedure of withdrawing, what rights Plaintiff had as a result of his decision not to give her full accommodations as agreed to in or around January 2007.

56. Plaintiff took the following courses and received the following grades for the second semester, first year, with resulting grade-point average at St. Thomas University School of Law:

    | Course | Credits | Grade |
    |---|---|---|
    | Civil Procedure II- | (3 credits) | C |
    | Contracts II- | (3 credits) | C |
    | Property II- | (3 credits) | C |
    | Torts II- | (3 credits) | C+ |
    | Adv. Legal Analysis Writing and Research- | (2 credits) | C |
    | Semester Grade Point Average | | 2.1 |
    | Cumulative Grade Point Average | | 1.87 |

57. As directed by Hernandez, Plaintiff met with three out of five professors, after being dismissed to ascertain the accuracy of the grades. Plaintiff did go over two exams with the appropriate professors.

58. Plaintiff did request to meet with Professor Daniel Gordon. Professor Daniel Gordon was out of town not to return until August 2007 and was thus unable to meet with the Plaintiff.

59. In or around May 2007, Plaintiff visited the Office of Student Affairs and inquired as to the exact format of the personal hearing and was told by the secretaries employed by Defendant that they had no personal knowledge to answer the questions posed by Plaintiff.

60. Defendant required petitioners for readmission to submit their petitions on June 1 and the date of the personal hearing was scheduled for June 6.

61. Plaintiff submitted her written petition for readmission on June 1 and appeared before the Academic Standing Committee on June 6. Plaintiff was informed by Defendant's agents and/or employees that there were five members of the Academic Standing Committee but there were in or around ten people present at the hearing.

62. The time allotted between when Defendant released the grades, notified students of dismissal, and informed the students of dates when the petition was due and hearing was scheduled was not sufficient to allow petitioners adequate time to submit their petition if based on medical reasons.

63. The time allotted between when Defendant released the grades, notified students of dismissal, and informed the students of dates when the petition was due and hearing was scheduled was in or around a week.

64. The lack of time allotted for petitioners described in paragraphs 57 and 59 was in accordance with the plan described in paragraph 81 and was not sufficient to allow Plaintiff adequate time to submit her petition which was largely based upon medical reasons.

65. Plaintiff was permitted by Defendant to continue in her summer courses despite the dismissal pending the decision of the Academic Standing Committee.

66. Despite Plaintiff's improvement and affirmative showing that Plaintiff has the capacity to obtain over a 2.0 in the second semester, obtaining a tutor, obtaining a psychologist, Defendant denied Plaintiff's petition for readmission.

67. Plaintiff was notified of the denial of her petition for readmission via e-mail on June 7, 2007. The e-mail was sent approximately 9 a.m. on June 7, 2007.

68. On three separate occasions, agents and/or employees for the Defendant informed Plaintiff she did not receive full accommodations nor a medical reference and/or that her petition for reinstatement was rejected because:
    (1) It appeared to Defendant's agents that Plaintiff was seeking pity by explaining her disability and the circumstances that brought about her psychological disability
    (2) The psychological disability and the circumstances that brought about psychological disability led Defendant's agents and/or employees to conclude that Plaintiff was unable to handle the rigors and subject matter of law school
    (3) The previously agreed upon testing accommodations would ultimately cost Defendant money they were unwilling to spend.

69. Defendant allowed less than one day to consider Plaintiff's petition and hearing.

70. Defendant promised a refund to pupils that were dismissed and not allowed to continue in their summer courses. Plaintiff did not receive a refund of monies paid to the Defendant for summer session until around two months following the dismissal.

71. Plaintiff having not received a refund continued to attend classes and was present for Evidence class, without incident, in the morning of June 12, 2007.

72. Plaintiff expressed concern as to what her options were and that she was in extreme distress when meeting with several employees and/or agents of St. Thomas University in room 2-2 in the afternoon of June 12, 2007.

73. The employees and/or agents with which Plaintiff met on June 12 included but not limited to Mr. Peter Kelly, Ms. Barbara Singer, Ms. Brenda Melville and later the Miami-Dade Police.

74. At all relevant times, Defendant's employees and/or agents never asked Plaintiff to leave the premises. Defendant's employee, Isaac Carter, sent an email to Plaintiff banning her from campus on or around June 12, 2007.

75. Defendant's employees and/or agents made false statements to the Miami-Dade Police regarding the Plaintiff. Peter Kelly filed a partially false police report. Defendant failed to correct the falsity. In or around June 12, 2007, Defendant's employees and/or agents made statements to other third parties that were of a private nature.

76. In or around June and July 2007, Defendant's employees and/or agents repeatedly denied Plaintiff's requests for Defendant to submit the reasons for denial into written form to her. Defendant's employees and/or agents also repeatedly denied Plaintiff's requests to lift the ban.

77. On August 9, Plaintiff sent an email to Hernandez, Dean Cecile Dykas, and Dean Alfredo Garcia, and the Academic Standing Committee to reconsider the decision rendered on June 7.

78. In or around June and/or July 2007, Peter Kelly told Plaintiff that she could repetition in one year.

79. On or around August 28, 2007 Plaintiff wrote and mailed a letter to Monsignor Casale, President of St. Thomas University, urging him to reinstate the Plaintiff.

80. On August 30, 2007, Plaintiff received an email from Monsignor Casale expressing his inability to overturn the decision of the Academic Standing Committee.

81. At all relevant times, Defendant's agents, officers, and employees operated under a plan to increase enrollment and revenues from tuition while simultaneously attempting to improve bar passage rates by dismissing students that failed to maintain a certain grade point average. Defendant is withholding and/or delaying information and services from at least some of its students in order to dismiss them.

82. Students were made aware of the lowering of the standard to the 2.0 during the Orientation.

83. Orientation for first year law students of the 2006-2007 academic school year began and ended in August 2006.

84. At all relevant times, the lowering of the standard to the 2.0 was not reflected in the personal Student Handbook given to students by Defendant.

85. At all relevant times, neither the Student Catalog or the Student Handbook specifically referred to:
    (1) the requirements or documentation which a student would need to obtain accommodations,
    (2) a specific date that documentation would need to be provided,
    (3) Psychological disabilities.

86. Under the Rules of Procedure for Approval of Law Schools promulgated by the American Bar Association, Standard 210 "Law School-University Relationship" subsection (a) provides "If a law school is part of a university, that relationship shall serve to enhance the law school's program."

87. Under the Rules of Procedure for Approval of Law Schools promulgated by the American Bar Association, Standard 210 "Law School-University Relationship" subsection (c) "The resources generated by a law school that is part of a university should be made available to the law school to maintain and enhance its program of legal education."

88. Under the Rules of Procedure for Approval of Law Schools promulgated by the American Bar Association, Standard 211 "Non-discrimination and Equality of Opportunity" subsection (a) provides "A law school shall foster and maintain equality of opportunity in legal education, including employment of faculty and staff, without discrimination or segregation on the basis of race, color, religion, national origin, gender or sexual orientation, age or disability."

89. Under the Rules of Procedure for Approval of Law Schools promulgated by the American Bar Association, Standard 211 "Non-discrimination and Equality of Opportunity" subsection (b) provides "A law school shall not use admission policies or take other action to preclude admission of applicants or retention of

students on the basis of race, color, religion, national origin, gender, sexual orientation, age or disability."

90. Under the Rules of Procedure for Approval of Law Schools promulgated by the American Bar Association, Standard 501 "Admissions" subsection (b) provides "A law school shall not admit applicants who do not appear capable of satisfactorily completing its educational program and being admitted to the bar."

91. Under the Rules of Procedure for Approval of Law Schools promulgated by the American Bar Association, Standard 509 "Basic consumer information" provides "A law school shall publish basic consumer information. The information shall be published in a fair and accurate manner reflective of actual practice."

92. Under the Rules of Procedure for Approval of Law Schools promulgated by the American Bar Association, Standard 511 "Student support services" provides "A law school shall provide all its students, regardless of enrollment or scheduling option, with basic student services, including maintenance of accurate student records, academic advising and counseling, financial aid counseling, and an active career counseling service to assist students in making sound career choices and obtaining employment. If a law school does not provide these types of student services directly, it must demonstrate that its students have reasonable access to such services from the university of which it is a part or from other sources."

93. Defendant denied the Plaintiff full accommodations as described in paragraphs 40 and 54 with the intention of dismissing the Plaintiff in accordance with the plan described in paragraph 81.

94. Defendant denied the Plaintiff opportunity for new and appropriate testing as described in paragraphs 44, 46, and 51 with the intention of dismissing the Plaintiff in accordance with the plan described in paragraph 81.

95. Monsignor Casale only allowed one day for investigating Plaintiff's claims and considering her request for reinstatement.

96. Defendant's conduct included but not limited to the conduct as described in paragraphs 31, 36, 46, 50, 60, 65, and 94 recklessly caused the Plaintiff to be dismissed from law school.

97. Defendant failed to make students aware of the application of the 2.0 standard.

98. Defendant's agents and/or employees were contemplating dismissal and denial of repetition while encouraging Plaintiff to repetition, meet with professors, what to assert in the petition and delaying or withholding information regarding disability accommodation.

99. At all relevant times, Defendant has permitted at least one student with less than a 2.0 cumulative average to return after one year.

100. At all relevant times, Defendant allowed at least one person to continue their studies at the School of Law despite having a less than 2.0 cumulative average for the first year.

101. Plaintiff, being dismissed from law school, has been damaged as follows:
    a. Loss of tuition fees paid to Defendant in the amount of $25, 800.
    b. Loss of residency and occupancy expenses associated with law school attendance in the amount of $16,200.
    c. Interest accrued from tuition loan fees paid to Defendant and residency and occupancy expenses
    d. Loss of earnings during the attendance of law school estimated in the amount of $35,000.
    e. Disqualification from attending another A.B.A. approved law school for a period of two years pursuant to Standard 505 of the A.B.A.
    f. Academic stigma of dismissal from a graduate program of education, affecting status and opportunity to gain employment, attend another graduate program, etc.
    g. Personal embarrassment, emotional distress, and emotional upset.

## **CAUSES OF ACTION**

### COUNT ONE: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

102. Plaintiff repeats and realleges all prior allegations set forth at length.

103. The Defendant is required to comply with the Americans with Disabilities Act.

104. The Plaintiff was and is entitled to the benefit and protection under the Americans with Disabilities Act.

105. The Defendant's intent to comply with the American Disabilities Act is set forth in the Student Handbook.

106. The Plaintiff was regarded as having a disability.

107. The Plaintiff had a record of impairment.

108. At all relevant times, the Defendant was aware of Plaintiff's record of impairment and/or circumstances that caused Plaintiff's disability.

109. At all relevant times, the Plaintiff had and has a psychological disability that interfered with one or more major life activities.

110. In its omission and failure to provide services and in its statements made to and in regard to Plaintiff including but not limited to Defendant's conduct as described in paragraphs 46, 49, 55, and 68 Defendant is in violation of the American Disabilities Act.

111. Defendant readmitted students similarly situated but dismissed the Plaintiff.

112. Plaintiff is entitled to reinstatement.

### COUNT TWO: DISCRIMINATION UNDER REHABILITATION ACT

113. Plaintiff repeats and realleges all prior allegations set forth at length.

114. At all relevant times, Plaintiff has a disability under the Rehabilitation Act.

115. Plaintiff is otherwise qualified for readmission.

116. Plaintiff was denied readmission solely by reason of her disability.

117. Plaintiff availed herself of a federally approved student loan program.

118. Defendant received and/or benefited from federal financial assistance.

### COUNT THREE: NEGLIGENT MISREPRESENTATION

119. Plaintiff repeats and realleges all prior allegations set forth at length.

120. Defendant's representations were made either intentionally or they were made without knowledge of its truth or falsity.

121. Defendant knew the representations were false.

122. Defendant's representations were made either intentionally or they were made without knowledge of its truth or falsity.

123. Plaintiff reasonably relied upon the representations.

### COUNT FOUR: INTENTIONAL MISREPRESENTATION

124. Plaintiff repeats and realleges all prior allegations set forth at length.

125. Defendant made false representations concerning material facts to the Plaintiff.

126. Defendant knew the representations were false.

127. Plaintiff reasonably relied upon the representations.

128. As a proximate result of that reliance, Plaintiff suffered loss and harm.

### COUNT FIVE: BREACH OF FIDUCIARY DUTY

129. Plaintiff repeats and realleges all prior allegations set forth at length.

130. The nature of the relationship between Plaintiff and Defendant was such that Plaintiff had a special confidence in Defendant and Defendant accepted her trust and the duty to advise Plaintiff.

131. At all relevant times, Defendant had a fiduciary duty to Plaintiff, express and implied-in-law.

132. Defendant breached their fiduciary relationship with the Plaintiff.

133. All agents and/or employees of Defendant had a fiduciary relationship with the Plaintiff at all relevant times.

134. Defendant had a duty to disclose material facts and knowledge of some such facts were in the Defendant's sole possession.

135. As a proximate result of Defendant's breach, Plaintiff suffered damage.

### COUNT SIX: FRAUD

136. Plaintiff repeats and realleges all prior allegations set forth at length.

137. Defendant made misrepresentations of material fact.

138. Defendant knew or should have known of the falsity of the statements.

139. Defendant intended that the Plaintiff rely and act on the misrepresentation.

140. Defendant purposely and knowingly made misrepresentations and omissions of material fact with the intent that the Plaintiff would rely on them to her detriment.

141. Defendant's misrepresentations were made willfully to deceive the Plaintiff and/or recklessly without knowledge.

142. Plaintiff suffered loss in reasonable reliance on the misrepresentation.

143. Defendant was under a duty to disclose the new cumulative format of examinations for the second semester within a reasonable amount of time.

144. Defendant failed to disclose the second semester exam format within a reasonable amount of time.

### COUNT SEVEN: CONSTRUCTIVE FRAUD

145. Plaintiff repeats and realleges all prior allegations set forth at length.

146. Defendant took unconscionable and improper advantage at the expense of the Plaintiff.

147. Defendant misrepresented and/or concealed material facts to/from the Plaintiff.

148. Defendant had a duty to disclose material facts and knowledge of some such facts were in the Defendant's sole possession.

149. Plaintiff suffered damages as a result of Defendant's conduct.

### COUNT EIGHT: PROMISSORY ESTOPPEL

150. Plaintiff repeats and realleges all prior allegations set forth at length.

151. Defendant made representations as to a material fact that was contrary to a later asserted position.

152. Plaintiff reasonably relied on Defendant's representation.

153. Plaintiff changed her position in reliance on Defendant's representation.

### COUNT NINE: BREACH OF CONTRACT

154. Plaintiff repeats and realleges all prior allegations set forth at length.

155. Defendant had contractual obligations to the Plaintiff.

156. By violating the terms set forth in the handbook, Defendant breached their contractual obligations to the Plaintiff.

157. By violating the terms set forth in the verbal contract in the January meeting regarding accommodations, Defendant breached its contractual obligations to the Plaintiff.

158. Defendant materially breached contracts, both express and implied.

159. The unreasonable terms set forth in the handbook constitute an adhesion contract.

160. Plaintiff conducted herself in reliance on the verbal contract agreed to in the January meeting with Dean John Hernandez.

161. Plaintiff suffered damages as a result of Defendant's breach.

162. Plaintiff is entitled to restitution.

## COUNT TEN: NEGLIGENCE

163. Plaintiff repeats and realleges all prior allegations set forth at length.

164. Defendant had a duty to adequately provide Plaintiff with educational services in a professional and ethical manner.

165. Defendant failed to adequately provide Plaintiff with educational services in a professional and ethical manner. Defendant's failure constitutes a breach of duty.

166. As a direct and proximate result of Defendant's improper conduct, through its agents and employees, Plaintiff has suffered damages including but not limited to mental anguish, loss of opportunity, humiliation, loss of money, mental distress, and anxiety.

167. Defendant's conduct, dismissal, and ban were wrongful, intentional, and were without just cause.

168. Defendant's conduct, dismissal, and ban of Plaintiff constituted malicious action(s).

169. Defendant's conduct was arbitrary and was done for fraudulent purposes.

## COUNT ELEVEN: FAILURE TO DEAL IN GOOD FAITH

170. Plaintiff repeats and realleges all prior allegations set forth at length.

171. Defendants had an obligation to deal in good faith with Plaintiff at all relevant times.

172. Defendant breached their obligation to deal in good faith in their dealings with the Plaintiff.

173. Plaintiff has suffered damages as a result of Defendant's breach of their duty to deal in good faith.

## COUNT TWELVE: UNJUST ENRICHMENT

174. Plaintiff repeats and realleges all prior allegations set forth at length.

175. Due to Defendant's statements, actions, and omissions, Defendant was unjustly enriched and Plaintiff is entitled to judgment requiring Defendant to disgorge funds unjustly received.

176. Plaintiff conferred a benefit onto Defendant.

177. Defendant voluntarily accepted and retains the benefit Plaintiff conferred.

178. Permitting Defendant to retain the benefit would result in injustice.

### COUNT THIRTEEN: VIOLATION OF A.B.A. STANDARDS

179. Plaintiff repeats and realleges all prior allegations set forth at length.

180. Plaintiff was and is entitled to protection under the Standards promulgated by the A.B.A Council including without limitation to Standard 210, Standard 211, Standard 501, Standard 505, Standard 509, and Standard 511 promulgated by the American Bar Association under "Approval of Law Schools".

181. Defendant's conduct described in paragraph 81 violates Standards, Rules of Procedure for Approval of Law Schools, including but not limited to Standard 210, Standard 211, Standard 501, Standard 509, and Standard 511 promulgated by the American Bar Association under "Approval of Law Schools".

182. Defendant violated A.B.A. standards to the detriment of the Plaintiff.

### COUNT FOURTEEN: VIOLATION OF STATE AND FEDERAL STATUTES

183. Plaintiff repeats and realleges all prior allegations set forth at length.

184. At all relevant times, Plaintiff did avail herself of a federally approved student loan program.

185. Plaintiff was and is entitled to the benefit and protection of state and federal statutes and regulations with regard to refund policies, provision of educational services, and dismissal policies for students participating in loan programs.

### COUNT FIFTEEN: EMERGENT RELIEF

186. Plaintiff repeats and realleges all prior allegations set forth at length.

187. Plaintiff is entitled to review her Civil Procedure II and Torts II examinations.

188. Defendant has denied Plaintiff from reviewing her Civil Procedure II and Torts II examinations by, *inter alia,* banning her from campus.

## COUNT SIXTEEN: DEFAMATION

189. Plaintiff repeats and realleges all prior allegations set forth at length.

190. Plaintiff is a private person.

191. In or around June 12, 2007, Defendant made false statements to third parties regarding the Plaintiff that was injurious to her reputation.

192. Defendant's remarks regarding the Plaintiff to the Miami-Dade Police in or around June 12, 2007 fail to amount to qualified privilege.

193. Defendant's remarks made to other third parties on or around June 12, 2007 Defendant's conduct was not privileged and/or Defendant's conduct amounts to abuse of privilege.

194. Defendant's conduct constituted malicious action.

## COUNT SEVENTEEN: UNCONSCIONABLE CONTRACT

195. Plaintiff asserts and realleges all prior allegations at length.

196. At all relevant times, Defendant had contractual obligations to the Plaintiff.

197. The terms set forth in the handbook, particularly in reference to the Readmission Procedures are unconscionable, both procedurally and substantively, and unreasonable.

198. The procedures for petitioning readmission and handbook are one-sided, in favor of the Defendant.

199. Plaintiff lacked meaningful choice.

200. Contract terms were unfair and unreasonable.

201. At all relevant times, Plaintiff did not have the opportunity to understand all the terms in the contract.

202. There was an unreasonably harsh allocation of risks and/or costs which is not justified by the circumstances in which the contract was made.

203. There are contract provisions that seek to negate the reasonable expectations of the non-drafting party, Plaintiff.

204. There was unequal bargaining power between Plaintiff and Defendant, in favor of the Defendant.

COUNT EIGHTEEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

205. Plaintiff repeats and realleges all prior allegations set forth at length.

206. Defendant's conduct, actions, and statements were extreme and outrageous.

207. Defendant knowingly and purposely intended to and/or recklessly caused Plaintiff emotional distress.

208. Plaintiff did suffer emotional distress as a result of Defendant's conduct, actions, and statements.

209. The unreasonable procedures for the Petition for Readmission caused Plaintiff emotional distress.

210. The lack of time allotted to Plaintiff to adequately prepare her petition and prepare herself for the personal hearing caused Plaintiff to suffer emotional distress.

211. Defendant's statements through its agents and/or employees including but not limited to Defendant's conduct as described in paragraph 75 were made with the intention to cause and/or recklessly caused Plaintiff emotional distress.

212. Defendants statements through its employees and/or agents described in paragraph 72 were injurious to her reputation and of a private nature.

213. Defendant's ban, which was bestowed as a result of the false statement, was extreme.

COUNT NINETEEN: VIOLATION OF RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION ACT (RICO)

214. Plaintiff repeats and realleges all prior allegations at length.

215. The plan created by the Defendant described in paragraph 81 constitutes a violation of RICO.

216. Plaintiff suffered damages as a result of Defendant's violation.

217. Defendant constitutes an "enterprise".

COUNT TWENTY: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

218. Plaintiff repeats and realleges all prior allegations set forth at length.

219. Defendant's conduct as described in paragraph 81 violated Plaintiff's federal rights.

220. Defendant's plan, actions, statements and conduct constitute an actionable wrong.

## DEMAND FOR RELIEF

Wherefore Plaintiff demands relief as follows:
   (1) Reinstatement to St. Thomas University School of Law.
   (2) Refund of tuition and fees paid to St. Thomas University School law with interest.
   (3) Compensatory damages.
   (4) Punitive damages.
   (5) Treble damages, if applicable.
   (6) Reimbursement of reasonable court and attorneys fees.
   (7) Emergent/injunctive relief enjoining Defendant from engaging in their dismissal and readmission policies.
   (8) Further relief as the court deems just and proper.

## JURY DEMAND- RULE 38

The undersigned Plaintiff does hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

8788 SW 12th Street #204F
Miami, FL 33174
(516) 776-4089

Dated: September 24, 2007

By: _____

Randall Forbes
Pro Se Plaintiff

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**07-22502**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Forbes, Randall V | St. Thomas University Inc. |
| (b) County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) 516-776-9089<br>Randall Forbes<br>Pro Se Plaintiff<br>8788 SW 10th Street #204F<br>Miami, FL 33174 | Attorneys (If Known)<br>**CIV-HOEVELER**<br>**MAGISTRATE JUDGE**<br>**BROWN** |

(d) Check County Where Action Arose: ☒ MIAMI-DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

DADE-07-22502-CV-HOEVELER-BROWN

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☒ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☒ NO    b) Related Cases ☐ YES ☒ NO

JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

US Civil Statute: 42 U.S.C 1810a
Brief Description: unlawful termination from school based upon psychological disability

LENGTH OF TRIAL via 19 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
_Randall Forbes_

DATE 9/24/07

FOR OFFICE USE ONLY
AMOUNT $350.00   RECEIPT # 967093 IFP

09/24/07