UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  07-22502 – CIV HOEVELER
MAGISTRATE JUDGE BROWN

RANDALL VANESSA FORBES,

   Plaintiff,

v.

ST. THOMAS UNIVERSITY, INC.,

   Defendant.

_____/

## THIRD AMENDED COMPLAINT

COMES NOW the Plaintiff, RANDALL VANESSA FORBES (hereinafter "Plaintiff"), and files her Third Amended Complaint and states as follows:

### JURISDICTION

1.  Plaintiff bases jurisdiction on Federal Question 28 USC §1331; Jurisdiction arises under federal statutes and regulations including without limitation, the Americans with Disabilities Act, 42 U.S.C. § 12102, and the Rehabilitation Act of 1973, 29 U.S.C. §794.

### PARTIES

2.  At all times mentioned herein, Plaintiff, Randall Vanessa Forbes (Plaintiff), locally resides at 8788 SW 12th Street, Apartment 204F, Miami, FL, 33174, Miami- Dade County, State of Florida.

1

3. At all times mentioned herein, Plaintiff, Randall Vanessa Forbes (Plaintiff) permanently resides at 122 North Brookside Avenue Freeport, New York 11520, Nassau County, State of New York.

4. The campus of Defendant is located at 16401 N.W. 37th Avenue Miami Gardens, Miami- Dade County, State of Florida.

### FACTUAL ALLEGATIONS

5. Plaintiff applied to St. Thomas University in or around January, 2006 and was placed on the waitlist. In or around the spring of 2006, Plaintiff was taken off the waitlist and admitted by the Defendant.

6. At all relevant times, Plaintiff did avail herself of a federally approved student loan program.

7. Plaintiff matriculated at Defendant, St. Thomas University School of Law as a first year student commencing August 2006. Plaintiff was dismissed from Defendant, St. Thomas University School of Law in May 2007, for alleged failure to maintain a cumulative grade point average of 2.0. Plaintiff did appeal the dismissal to Defendant in written form, on June 1, 2007 and appeared for a personal hearing on June 6, 2007; the petition was denied on June 7, 2007.

8. At all relevant times, Mr. John F. Hernández ("Hernandez") was and is employed by the Defendant as the Assistant Dean for Student Affairs and Visiting Associate Professor of Law. As the Dean of Student Affairs, Hernandez has the duty to, *inter alia*, "evaluate and facilitate accommodations for those students seeking disability accommodations,

serve as the liaison for law students with the University's business, financial aid and campus housing offices, provide academic and course counseling to students, approve scheduling changes, overload request, request for leaves of absence and otherwise work with students who need guidance with regard to course selections."

9. In or around October 2006, Plaintiff asked the Academic Support Services for tutors in the first semester and was told that no one could receive a tutor in the first semester, first year which is not reflected in either the Student Handbook and/or Student Catalog.

10. Plaintiff took the following courses and received the following grades during the first semester, first year with resulting grade-point average at Defendant, St. Thomas University School of Law:

| Civil Procedure I- | (3 credits) | B |
|---|---|---|
| Contracts I- | (3 credits) | F |
| Torts I- | (3 credits) | C |
| Property I- | (3 credits) | D |
| Legal Analysis Research and Writing – | (3 credits) | C+ |
| Semester Grade Point Average............................................1.7 | | |

11. Plaintiff, based upon a grade point average of less than 2.0, was placed on academic probation after the first semester, first-year.

12. In or around January 2007, first year law students were informed that there was a new policy requiring that second semester examinations were to be cumulative.

13. In or around January 2007, Plaintiff requested three tutors from Academic Support Services. Plaintiff requested a tutor for contracts, property, and torts.

14. Out of the three tutors requested, Plaintiff received only one for

property.

15. Plaintiff suffers from a psychological disability known as Post Traumatic

Stress Disorder (PTSD).  At all relevant times, Plaintiff was and is suffering from

symptoms consistent with Post Traumatic Stress Disorder (PTSD).

16. In or around January or February 2007, Plaintiff met with Hernandez to

discuss, *inter alia*, receiving special accommodations for the second semester,

first-year.

17. During that meeting, Plaintiff described her financial status, what

accommodations she would need and what documentation she had, and the

procedure by which the University of Miami provided testing accommodations.

18. As a result of the meeting with Hernandez in or around February 2007,

Plaintiff was told by Hernandez she was to receive special accommodations for

the second semester, specifically, time and a half on exams and an isolated

separate testing location.  Plaintiff was to return to go over the details just before

the first examination.  Plaintiff was additionally asked to provide documentation in

the event "someone" asked for documentation of her disability.

19. At all relevant times, Plaintiff was never made aware of who would ask for

documentation of her disability but was told by Hernandez that whether and what

accommodations a student receives  is in the sole discretion of Hernandez.

20. At all relevant times, Plaintiff was not given a specific date as to when

documentation was to be provided to Hernandez.

21. The agreement between Hernandez and the Plaintiff regarding accommodations was not contingent on Plaintiff providing documentation.

22. During that meeting with Hernandez, Plaintiff inquired as to how to receive additional accommodations and if there was a pamphlet available. Plaintiff was told by Hernandez to meet with Dr. Joseph Gisondo for testing.

23. During the February meeting with Hernandez, Plaintiff inquired as to what type of testing would be adequate, and was told to ask Dr. Gisondo.  At that time, Hernandez made no mention of the Disability Guidelines Handbook. Despite Plaintiff's inquiries, Hernandez failed to mention and make the Disabilities Guidelines Handbook available to the Plaintiff at that time.

24. Plaintiff met with Dr. Gisondo in or around March for testing. Plaintiff was told by Dr. Gisondo during that meeting that testing was not available at the University, but would seek appropriate testing outside of the school on the Plaintiff's behalf.  Plaintiff was asked to allow a couple weeks time so that Dr. Gisondo would be able to find the appropriate medical professional.

25. Plaintiff signed two release forms for Dr. Gisondo to speak with outside medical professionals to obtain appropriate testing and to speak with Hernandez.

26. During the meeting with Dr. Gisondo, Plaintiff inquired as to what type of testing would be adequate and was told to ask Hernandez.  Plaintiff told Dr. Gisondo that Hernandez told her to ask Dr. Gisondo.  Dr. Gisondo failed to mention and make the Disabilities Guidelines Handbook available to Plaintiff.

27. Dr. Gisondo failed to contact Plaintiff again.  Plaintiff called several weeks later only to find out that Dr. Gisondo was no longer employed by the Defendant and there was no replacement at that time.

28. Plaintiff was not provided with a reference for an appropriate doctor and was hindered from obtaining her own doctor for testing by Defendant's failure to adequately respond to Plaintiff's inquiries as described in paragraphs 45 and 48.

29. In or around March or April 2007, Plaintiff complained of chest pains.  The ambulance was called on Plaintiff's behalf.

30. Plaintiff emailed the documentation from the University of Miami regarding her disability to Hernandez in or around April 2007.

31. Plaintiff did not receive a response from Hernandez but emailed Ms. Cathy Hayes, the secretary for Hernandez, to schedule an appointment with Hernandez.

32. Plaintiff met with Hernandez again in April to discuss the testing accommodations and redirected his attention to the email. Plaintiff witnessed Hernandez print and reread the email referring to the earlier meeting.  During the April meeting, Hernandez referred to that ambulance visit.  Hernandez failed to give Plaintiff full accommodations as discussed in the earlier meeting and failed to inform Plaintiff of the procedures of withdrawing and/or taking a leave of absence despite Plaintiff's inquiries.

33. Hernandez did not inform Plaintiff of her options, procedure of withdrawing, what rights Plaintiff had as a result of his decision not to give her full accommodations as agreed to in or around February 2007.

34. Plaintiff took the following courses and received the following grades for the second semester, first year, with resulting grade-point average at St. Thomas University School of Law:

| | | |
|---|---|---|
| Civil Procedure II- | (3 credits) | C |
| Contracts II- | (3 credits) | C |
| Property II- | (3 credits) | C |
| Torts II- | (3 credits) | C+ |
| Adv. Legal Analysis Writing and Research- (2 credits) | | C |
| Semester Grade Point Average...................................................2.1 | | |
| Cumulative Grade Point Average.....................................1.87 | | |

35. As directed by Hernandez, Plaintiff met with three out of five professors, after being dismissed to ascertain the accuracy of the grades. Plaintiff did go over two exams with the appropriate professors.

36. Plaintiff did request to meet with Professor Daniel Gordon. Professor Daniel Gordon was out of town not to return until August 2007 and was thus unable to meet with the Plaintiff.

37. In or around May 2007, Plaintiff visited the Office of Student Affairs and inquired as to the exact format of the personal hearing and was told by the secretaries employed by Defendant that they had no personal knowledge to answer the questions posed by Plaintiff.

38. Defendant required petitioners for readmission to submit their petitions on June 1 and the date of the personal hearing was scheduled for June 6.

39. Plaintiff submitted her written petition for readmission on June 1 and appeared before the Academic Standing Committee on June 6. Plaintiff was informed by Defendant's agents and/or employees that there were five members of the Academic Standing Committee but there were in or around ten people present at the hearing.

40. The time allotted between when Defendant released the grades, notified students of dismissal, and informed the students of dates when the petition was due and hearing was scheduled was not sufficient to allow petitioners adequate time to submit their petition if based on medical reasons.

41. Plaintiff was permitted by Defendant to continue in her summer courses despite the dismissal pending the decision of the Academic Standing Committee.

42. Despite Plaintiff's improvement and affirmative showing that Plaintiff has the capacity to obtain over a 2.0 in the second semester, obtaining a tutor, obtaining a psychologist, Defendant denied Plaintiff's petition for readmission.

43. Plaintiff was notified of the denial of her petition for readmission via e-mail on June 7, 2007. The e-mail was sent approximately 9 a.m. on June 7, 2007.

44. On three separate occasions, agents and/or employees for the Defendant informed Plaintiff she did not receive full accommodations or a

medical reference and/or that her petition for reinstatement was rejected

because:

> (1) It appeared to Defendant's agents that Plaintiff was seeking pity by explaining her disability and the circumstances that brought about her psychological disability
> (2) The psychological disability and the circumstances that brought about psychological disability led Defendant's agents and/or employees to conclude that Plaintiff was unable to handle the rigors and subject matter of law school
> (3) The previously agreed upon testing accommodations would ultimately cost Defendant money they were unwilling to spend.

45. Defendant allowed less than one day to consider Plaintiff's petition and

hearing.

46. Plaintiff expressed concern as to what her options were and that she

was in extreme distress when meeting with several employees and/or

agents of St. Thomas University in room 2-2 in the afternoon of June 12,

2007.

47. The employees and/or agents with which Plaintiff met on June 12

included but not limited to Mr. Peter Kelly, Ms. Barbara Singer, Ms.

Brenda Melville and later the Miami-Dade Police.

48. At all relevant times, Defendant's employees and/or agents never

asked Plaintiff to leave the premises.  Defendant's employee, Isaac

Carter, sent an email to Plaintiff banning her from campus on or around

June 12, 2007.

49. In or around June and July 2007, Defendant's employees and/or

agents repeatedly denied Plaintiff's requests for Defendant to submit the

reasons for denial into written form to her.    Defendant's employees and/or agents also repeatedly denied Plaintiff's requests to lift the ban.

50. On August 9, Plaintiff sent an email to Hernandez, Dean Cecile Dykas, and Dean Alfredo Garcia, and the Academic Standing Committee to reconsider the decision rendered on June 7.

51. In or around June and/or July 2007, Peter Kelly told Plaintiff that she could repetition in one year.

52. On or around August 28, 2007 Plaintiff wrote and mailed a letter to Monsignor Casale, President of St. Thomas University, urging him to reinstate the Plaintiff.

53. On August 30, 2007, Plaintiff received an email from Monsignor Casale expressing his inability to overturn the decision of the Academic Standing Committee.

54. At all relevant times, Defendant's agents, officers, and employees operated under a plan to increase enrollment and revenues from tuition while simultaneously attempting to improve bar passage rates by dismissing students that failed to maintain a certain grade point average. Defendant is withholding and/or delaying information and services from at least some of its students in order to dismiss them.

55.  At all relevant times, the lowering of the standard to the 2.0 was not reflected in the personal Student Handbook given to students by Defendant.

56.  At all relevant times, neither the Student Catalog or the Student Handbook specifically referred to:

> (1) the requirements or documentation which a student would need to obtain accommodations,
> (2) a specific date that documentation would need to be provided, psychological disabilities.

57. Defendant denied the Plaintiff opportunity for new and appropriate testing with the intention of dismissing the Plaintiff.

58. Defendant failed to make students aware of the application of the 2.0 standard.

59. Defendant's agents and/or employees were contemplating dismissal and denial of repetition while encouraging Plaintiff to repetition, meet with professors, what to assert in the petition and delaying or withholding information regarding disability accommodation.

60. At all relevant times, Defendant has permitted at least one student with less than a 2.0 cumulative average to return after one year.

61. At all relevant times, Defendant allowed at least one person to continue their studies at the School of Law despite having a less than 2.0 cumulative average for the first year.

## AMENDED COUNT I – VIOLATION OF AMERICANS WITH DISABILITIES ACT

a.  At all times material hereto, the Defendant was required to comply with Americans with Disabilities Act pursuant to 42 U.S.C. §12181(7)(J) because the Defendant qualifies as a "private entity that is considered a public accommodation ".

b.   The Plaintiff, at all times material hereto has suffered from a

disability, which is protected under the Americans with Disabilities

Act, 42 U.S.C. §12102.  The purpose of this federal law is to

"provide a clear and comprehensive national mandate for the

elimination of discrimination against individuals with disabilities."

42 U.S.C. §12101, (b)(1).

62.  Under the Americans with Disabilities Act, the terms "disability" with

respect to an individual means (A) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or (C) being regarded as having such

an impairment.

63.  The Plaintiff suffers from the mental illness or psychological disability of

post traumatic stress disorder ("PTSD").   This disability has impaired one

or more of her major life activities, including but not limited to learning,

studying and concentrating on issues.

64.  When the Plaintiff was in high school, she was sexually assaulted.

Then, when the Plaintiff was in college, she was raped again.

65.  Both of these traumas have resulted in Plaintiff's PTSD and caused her

difficulty when reading or studying.

66.  As a result of Plaintiff's disability, Plaintiff requested that the Defendant

accommodate her by giving her additional time to take tests and allow her

to take her exams in a private room, alone.  Because of the Plaintiff's prior

sexual attacks, she fears being in rooms with other individuals and it negatively impacts her ability to concentrate.

67.  Pursuant to 42 U.S.C. §12.182(a) "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." The Defendant was operating as a place of public accommodation pursuant to 42 U.S.C. §12.181(7)(J).

68. The Defendant discriminated against the Plaintiff for failure to accommodate her requests of giving her additional time to take tests and the ability to take tests in a comfortable, suitable facility.  Under federal law, there is a specific prohibition against such discrimination. Defendant's failure to accommodate the Plaintiff directly violates 42 U.S.C. §12.182(2)(A)(ii) as follows:

> "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;"

13

69. The Defendant violated the above-referenced provision for failing to provide an alternative testing center for the Plaintiff, despite her requests. In January, 2007, Plaintiff met with Mr. John F. Hernandez who is employed by the Defendant as the Assistant Dean for Student Affairs and visiting Associate Professor of Law.

70. At that time, the Plaintiff requested special accommodations for the second semester, first-year.

71. During Plaintiff's meeting with Mr. Hernandez, she described her financial status, what accommodations she would need and what documentation she had, as well as the procedure by which the University of Miami, her undergraduate institution, provided accommodations.

72. Despite Plaintiff's requests, Plaintiff was only granted partial testing accommodations.

73. The Defendant could have easily accommodated the Plaintiff and complied with the above-referenced provision, 42 U.S.C. §12.182(2)(A)(ii), simply by giving her additional time, placing her in an empty classroom and allowing her to take her tests in that environment. If the Plaintiff had been given more time to take her exams, and in a peaceful setting, her test scores could have improved enough to meet the required 2.0 GPA required by the Defendant.

74. Dr. Lydia Kalsner-Silver, a Florida Licensed Psychologist PY 6376, conducted an initial evaluation of the Plaintiff on June 2, 2007. Dr.

Kalsner-Silver reported that the Plaintiff had a range of symptoms consistent with an ongoing diagnosis of Post Traumatic Stress Disorder. See attached Exhibit "A".

75. Dr. Kalsner-Silver also reported that the Plaintiff suffered from "disturbing dreams, an exaggerated startle response, and persistent feelings of increased arousal.  The increased arousal has manifested itself in a difficulty concentrating, hyper vigilance and an exaggerated startle response."  See attached Exhibit "A".

## AMENDED COUNT II – DISCRIMINATION UNDER REHABILITATION ACT

76. Defendant has violated Section 504 of the Rehabilitation Act of 1973.

77. Plaintiff is a qualified individual with a disability in the United States.

78. Pursuant to Section 504 of the Rehabilitation Act of 1973, Section 504(a), "no otherwise qualified individual with a disability in the United States, as defined in section 7(20), shall, solely by reason of her or his disability, be excluded from the participation in, be denied the befits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…."  For purposes of this section, the term "program or activity" means all of the operations of Section 504(2)(A) a "college, university, or other postsecondary institution, or a public system of higher education."

15

79. At all times material, the Plaintiff availed herself of a federally approved student loan program. The Defendant also received and/or benefited from such federal financial assistance.

80. Also, at all times material hereto, the Plaintiff suffered from a disability that was protected under the above-referenced Rehabilitation Act.

81. The Defendant violated the Rehabilitation Act by discriminating against her as a result of her disability. The Defendant and its agents did not want to take the time to accommodate the Plaintiff and her disability.

82. The Defendant violated the Rehabilitation Act by denying Plaintiff's readmission solely for the reason of her disability. The Defendant also violated the Rehabilitation Act for its lack of willingness to accommodate the Plaintiff and her disability while enrolled as a student, as is required under Federal law.

**WHEREFORE**, the Plaintiff files this Second Amended Complaint and requests the following relief:

        A. Immediate reinstatement to St. Thomas University School of Law;

        B. Refund of tuition and fees paid to St. Thomas University School of Law with interest;

        C. Compensatory and any other Damages this Court deems just and proper;

        D. Reimbursement of reasonable attorneys' fees and costs;

        E. Any and all further relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on May 7, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,
/s/  Emily Joyce Phillips
EMILY JOYCE PHILLIPS (FB 0597961)

PHILLIPS LANIER
2 S. Biscayne Blvd., Ste.1684
Miami, FL 33131
T. 305.350.5299
F. 305.350.5298
Attorneys for Plaintiff Randall V. Forbes

## <u>SERVICE LIST</u>

Michael A. Mullen FL Bar No. 305731
Email: mmullen@gaebemullen.com
Gaebe Mullen Antonelli Esco & DiMatteo
420 S. Dixie Highway, 3rd Floor
Coral Gables, FL 33143
T. 305.667.0223
F. 305.284.9844
Attorneys for Defendant


J. Patrick Fitzgerald FL Bar No. 248681
Email:  jpf@jpfitzlaw.com
J. Patrick Fitzgerald, P.A.
110 Merrick Way, Suite 3-B
Coral Gables, FL 33134
T. 305.443.9162
F. 305.284.9844
Co-Counsel for Defendant



By:   <u>/s/  Emily Joyce Phillips</u>
       EMILY JOYCE PHILLIPS (FB 0597961)

**DR. LYDIA KALSNER-SILVER**        Licensed Psychologist   FL PY6376

5151 Collins Ave, #223-5, Miami Beach, FL  33140, (305) 866-3579

June 4, 2007

Academic Standing Committee
St. Thomas University School
Of Law
16401 NW 37th Avenue
Miami Gardens, FL

Dear Sir or Madame:

Randall Forbes was seen for an initial evaluation on 6/2/07. She reports a range of symptoms that are consistent with an ongoing diagnosis of Post Traumatic Stress Disorder.  As a result of two sexual assaults in high school and a rape in college, Ms. Forbes was exposed to a series of traumatic events which involved actual or threatened death or serious injury, and was a threat to her personal integrity.  She is experiencing a range of symptoms consistent with a diagnosis Post Traumatic Stress disorder including disturbing dreams, an exaggerated startle response, and persistent feelings of increased arousal.  The increased arousal has manifested itself in a difficulty concentrating, hyper vigilance and an exaggerated startle response.  She also reports excessive rumination and intrusive thoughts.

Ms. Forbes also reports symptoms of depression which include feelings of hopelessness, and a difficulty sleeping.  She is currently prescribed Setraline (an antidepressant) and Aprazolam (for anxiety) by her primary care physician. While the medication has helped to reduce Ms. Forbes's anxiety level, it has left her feeling extremely fatigued.  All of these symptoms have no doubt had an adverse impact on Ms. Forbes's academic performance.  Despite her emotional distress, Ms. Forbes has not received mental health counseling since terminating therapy over a year ago with Ms. Liza Papazian. She also reports that she has never been evaluated by a psychiatrist, which is essential, in my opinion, for tailoring medication to a patient's needs.

Ms. Forbes reports that she will be devastated if she is terminated from law school. She is highly invested in earning her law degree and she reports that it is the major motivating factor in her life.  It is my recommendation the Ms. Forbes resume weekly individual therapy and be evaluated by a psychiatrist for ongoing medication management.  With proper psychiatric care and ongoing counseling, it is my opinion that Ms. Forbes could potentially function more effectively as a law student.

Exhibit "A"

Should you have additional questions, please feel free to contact me at (305) 301-4264.

Sincerely,

Dr. Lydia Kalsner-Silver
Florida Licensed Psychologist PY6376