UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  07-22502-CIV-HOEVELER

RANDALL VANESSA FORBES,

      Plaintiff,

v.

ST. THOMAS UNIVERSITY, INC.,

      Defendant.

_____ /

### DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, ST. THOMAS UNIVERSITY, INC. (hereinafter "ST. THOMAS" or "the School"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.5.A, files this its Motion for Final Summary Judgment and Incorporated Memorandum of Law in Support Thereof, and states as follows:

### INTRODUCTION

This lawsuit arose after the Plaintiff, RANDALL VANESSA FORBES (hereinafter "Plaintiff," "FORBES"), was academically dismissed from the St. Thomas University School of Law for failing to maintain a 2.0 grade point average at the end of her first year, as required by the terms and conditions of the School's Student Handbook.  The Plaintiff alleges that, during her time at the School, she suffered from Post Traumatic Stress Disorder. She argues that she was wrongfully discriminated against by ST. THOMAS, in that the School allegedly failed to provide her with certain testing accommodations that she purportedly requested and which she claims were reasonable and in fact necessary.  The Plaintiff has asserted two (2) claims against ST. THOMAS:  one claiming a violation of Title III of the American with Disabilities Act; and one alleging discrimination in contravention of § 504 of the Rehabilitation Act of 1973.

CASE NO.:  07-22502-CIV-HOEVELER
_____

## FACTS WHICH CANNOT REASONABLY BE DISPUTED[1]

1.      The Plaintiff was diagnosed with Post Traumatic Stress Disorder (hereinafter "PTSD") stemming from several sexual assault incidents that occurred before she was admitted into the law school.

2.      The Plaintiff took the Law School Assessment Test (hereinafter "LSAT") on two (2) separate occasions and earned scores in the low 140s.  See July 15, 2009, Deposition of Randall Vanessa Forbes, filed concurrently herewith, at Volume I, pp. 91- 92; see also Ex. 7 to Deposition of Randall Vanessa Forbes.  The Plaintiff did not seek or request any special accommodations for the LSAT examinations.  See Forbes Deposition at Volume I, pp. 91- 92.

3.      After graduating from the University of Miami and taking the LSAT, the Plaintiff applied to several law schools including ST. THOMAS.  See Forbes Deposition at Volume I, p. 94.

4.      In 2006, ST. THOMAS accepted the Plaintiff into its law school program.   It was the only accredited law school that accepted the Plaintiff into its program.   See Forbes Deposition at Volume I, p. 95.

5.      The Plaintiff was required to attend a mandatory orientation before commencing law school.  See Forbes Deposition at Volume I, p. 96.

6.      The Plaintiff began law school in the fall of 2006 at ST. THOMAS.  At the time that she began law school, the Plaintiff was aware that ST. THOMAS required students to maintain a grade point average of 2.0 or higher.  See Forbes Deposition at Volume I, p. 98.

7.      The Plaintiff did not notify ST. THOMAS before law school classes started that she suffered from PTSD or that she required any special accommodations.   See Forbes

---

[1]   These are facts which are not reasonably disputed for purposes of this Motion for Summary Judgment.

Deposition at Volume I, p. 97.

8.      Furthermore, the Plaintiff did not formally request any special accommodations during her first semester of law school.  See Forbes Deposition at Volume I, pp. 131- 32; p. 152.

9.      At the end of the first semester, the Plaintiff earned a total grade point average of 1.7.  See Forbes Deposition at Volume I, pp. 110- 11.

10.      Thereafter, ST. THOMAS notified that Plaintiff that she was being placed on academic probationary status for failing to maintain a minimum grade point average of 2.0.  See Forbes Deposition at Volume I, pp. 118- 19; see also Ex. 1 to Deposition of Randall Vanessa Forbes.

11.      During the second semester, the Plaintiff informed the Defendant that she suffered from PTSD, and requested special testing accommodations.  See Plaintiff's Third Amended Complaint, DE #30, at p.4, ¶¶16- 18, ¶22.

12.      During her second semester at ST. THOMAS, the Plaintiff produced to Defendant a University of Miami memorandum dated August 9, 2004, that detailed the accommodations she had received at the University of Miami.  See Forbes Deposition at Volume II, pp. 163- 64. See also Ex. 8 to Deposition of Randall Vanessa Forbes.

13.      The memorandum stated that the Plaintiff was to receive "extended time (up to time and a half) for examinations and in-class assignments" and a "distraction-reduced location, as needed."  See Ex. 8 to Deposition of Randall Vanessa Forbes.

14.      Thereafter, ST. THOMAS provided provisional testing accommodations to the Plaintiff, which included time and a half and a room with limited distractions.  See Exs. 5, 9, 10, 11, and 12 to Deposition of Randall Vanessa Forbes.

15.      At the end of the second semester, the Plaintiff earned a combined grade point

average of less than 1.90.  See Plaintiff's Third Amended Complaint, DE #30, at p.7, ¶34.

16.     Following the second semester, ST. THOMAS notified the Plaintiff that she was being dismissed from law school for failing to maintain a minimum grade point average of 2.0. See Forbes Deposition at Volume II, p. 239; see also Plaintiff's Third Amended Complaint, DE #30, at p.7, ¶35.

17.     The Plaintiff filed a written petition for readmission requesting to be reinstated into the law school.  See Plaintiff's Third Amended Complaint, DE #30, at p.8, ¶39; see also Forbes Deposition at Volume II, pp. 251- 52; and Ex. 16 to Deposition of Randall Vanessa Forbes.  In her petition, the Plaintiff did not state that she performed poorly on her exams because she was not given the testing accommodations that she requested.

18.     A hearing was held on June 6, 2007, before Defendant's Academic Standing Committee.  See Plaintiff's Third Amended Complaint, DE #30, at pp. 7-8, ¶¶ 38 and 39; see also Forbes Deposition at Volume II, p. 262.  At the hearing, the Plaintiff did not claim that she performed poorly on her exams because she was not given testing accommodations that she had requested.

19.     On June 7, 2007, the Plaintiff's petition for readmission was denied unanimously by the Academic Standing Committee.  See Plaintiff's Third Amended Complaint, DE #30, at pp. 8- 9; see also Ex. 19 to Deposition of Randall Vanessa Forbes.

20.     The Plaintiff's efforts to appeal the Committee's decision at the School were unsuccessful.

21.     The instant lawsuit stems from the Plaintiff's academic dismissal from the Law School.  The Plaintiff has asserted causes of action under Title III of the American with Disabilities Act and § 504 of the Rehabilitation Act.  See Third Amended Complaint.

CASE NO.:  07-22502-CIV-HOEVELER
_____

## MEMORANDUM OF LAW

### Standard for Granting Summary Judgment

A party against whom a claim, counterclaim or cross-claim is asserted may move at any time for a summary judgment in the party's favor as to the entire claim.  Fed.R.Civ.P. 56(b).  "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "The moving party is entitled to a judgment as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"The non-moving party's burden  . . . is not lessened by the movant's initial burden. Accordingly, once the movant has demonstrated that an essential element of the non-moving party's case is lacking, the non-moving party must offer proof sufficient to establish the existence of the essential element or else the district court will be required to grant the movant's motion for summary judgment."  Antenor v. D&S Farms, 866 F. Supp. 1389, 1395 (S.D. Fla. 1994), *rev'd on other grounds* by 88 F.3d 925.

## ARGUMENT

### Summary Judgment Should Be Granted to Defendant on Plaintiff's Claims for Violation of the Americans with Disabilities Act; Defendant is also Entitled to Summary Judgment on Forbes's Claims of Discrimination Under the Rehabilitation Act

In Count I of the Third Amended Complaint, the Plaintiff asserts a claim under Title III of the Americans with Disabilities Act.  In Count II, she claims discrimination under the Rehabilitation Act of 1973, as well.  See Third Amended Complaint, *generally*.

42 U.S.C. Section 12182(a) (the ADA) provides that "No individual shall be

CASE NO.:  07-22502-CIV-HOEVELER
_____

discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public

accommodation."   Pursuant to 42 U.S.C. Sec. 12181(7)(J), private entities, such as ST.

THOMAS, are considered a place of public accommodations for purposes of  the act.

        In the Third Amended Complaint, the Plaintiff alleges that ST. THOMAS violated 42

U.S.C. Section 12181(b)(2)(A)(ii), which provides in part that discrimination includes:

> a failure to make reasonable modifications in policies, practices, or
> procedures, when such modifications are necessary to afford such
> goods, services, facilities, privileges, advantages, or
> accommodations to individuals with disabilities, unless the entity
> can demonstrate that making such modifications would
> fundamentally alter the nature of such goods, services, facilities,
> privileges, advantages, or accommodations . . .

42 U.S.C. Section 12181(b)(2)(A)(ii).   The Plaintiff alleges that the discrimination stemmed

from ST. THOMAS' failure to provide an "alternate testing center for the Plaintiff."  See Third

Amended Complaint at ¶ 69.  Additionally, she alleges that ST. THOMAS could have complied

with the ADA "simply by giving her additional time, placing her in an empty classroom and

allowing her to take her tests in that environment." Id. at ¶ 73.

        Meanwhile, Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §701, *et seq.*)

provides that "no otherwise qualified individual with a disability in the United States, as defined

in section 7(20), shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance . . . "

        FORBES claims that:

> The Defendant violated the Rehabilitation Act by discriminating
> against her as a result of her disability. The Defendant and its

> agents did not want to take the time to accommodate the Plaintiff
> and her disability . . . The Defendant violated the Rehabilitation
> Act by denying Plaintiff's readmission solely for the reason of her
> disability. The Defendant also violated the Rehabilitation Act for
> its lack of willingness to accommodate the Plaintiff and her
> disability while enrolled as a student, as is required under Federal
> law.

See Third Amended Complaint at ¶¶ 81 and 82.

To prevail on a claim under Title III of the ADA, a plaintiff must prove that (a) she has a disability within the meaning of the ADA, (b) she was discriminated against by the defendant on the basis of her disability, and (c) such defendant owns, leases (or leases to), or operates a place of public accommodation.  Bowers v. Nat'l Collegiate Athletic Ass'n, 9 F. Supp 2d 460, 480 (D.N.J. 1998).

To prevail on a claim under Section 503 of the Rehabilitation Act, a plaintiff must establish that:  (1) she is disabled; (2) she is otherwise qualified for participation in the program at issue: (3) she is being excluded from participation in, being denied the benefit of, or being subjected to discrimination by the program solely because of her disability; and (4) the program in question is receiving federal financial assistance.  L.M.P. ex rel E.P. v. School Bd. of Broward County, Fla., 516 F. Supp. 2d 1294, 1301 (S.D. Fla. 2007) (citations omitted).

When, as here, a plaintiff sues for the same relief under both the ADA and the Rehabilitation Act, the court will fuse those causes of action, since both Acts provide similar relief and remedies.  See Stewart v. County of Brown, 86 F.3d 107 (7th Cir. 1996).  Moreover, the definition of a "disability" within the two Acts is the same.  *Compare* 42 U.S.C. § 12102(2) (defining the term "disability" under the ADA as "a physical or mental impairment that ***substantially limits*** one or more of the major life activities of [an] individual") (emphasis added) *with* 29 U.S.C.A. § 705(9)(B) (defining the term "disability" under the Rehabilitation Act "a

CASE NO.:  07-22502-CIV-HOEVELER

_____

physical or mental impairment that ***substantially limits*** one or more major life activities")

(emphasis added).  See also Stern v. Univ. of Osteopathic Med. & Health Sci., 220 F.3d 906, 908

(8th Cir. 2000) ("in general, cases interpreting the Americans with Disabilities Act of

1990(ADA) and those interpreting the Rehabilitation Act are applicable and interchangeable")

(citation omitted).

Finally, "Rehabilitation Act claims are analyzed in a manner similar to ADA claims

except that the Rehabilitation Act imposes a requirement that a person's disability serve as the

*sole* impetus for a defendant's adverse action against the plaintiff."  Amir v. St. Louis Univ., 184

F.3d 1017, 1029 n.5 (8th Cir. 1999) (emphasis in original) (citation omitted).

### Plaintiff did not suffer from a disability within the meaning of the ADA or the Rehabilitation Act

At all times material to her allegations, the Plaintiff apparently or purportedly had PTSD.

With respect to an individual, the ADA defines a "disability" as:

> (A)    a physical or mental impairment that substantially limits one or more of
> the major life activities of such individual;
> (B)    a record of such an impairment; or
> (C)    being regarded as having such an impairment.

See 42 U.S.C. § 12102 (1).  "Major life activities" include, but are not limited to, caring for

oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

bending, speaking, breathing, ***learning***, reading, concentrating, thinking, communicating, and

working.  42 U.S.C. § 12102 (2) (emphasis added).

The Plaintiff alleges that she suffers from a mental or psychological disorder—PTSD.

See Third Amended Complaint, ¶ 63.  The Plaintiff further alleges that this condition "has

impaired one or more of her major life activities, including but not limited to learning, studying

and concentrating on issues."  Id.  FORBES has alleged that her PTSD impaired her ability to

participate in the major life activities of "learning, studying, and concentrating on issues."  See

CASE NO.:  07-22502-CIV-HOEVELER

_____

Third Amended Complaint at ¶ 63.  More particularly, the Plaintiff has claimed that her PTSD impacted her test-taking abilities, and that special accommodations should have been made available to her for test-taking.  See, e.g., Third Amended Complaint at ¶ 66 (alleging that "Plaintiff requested that the Defendant accommodate her by giving her additional time to take tests and allow her to take her exams in a private room, alone" and explaining that "[b]ecause of the Plaintiff's prior sexual attacks, she fears being in rooms with other individuals and it negatively impacts her ability to concentrate"); and at ¶ 69 ("failing to provide an alternative testing center for the Plaintiff, despite her requests"); and ¶ 73 ("[i]f the Plaintiff had been given more time to take her exams, and in a peaceful setting, her test scores could have improved").

Indeed, Plaintiff expanded upon these allegations in her deposition.  She testified repeatedly about her difficulty in test-taking, as opposed to and distinct from classroom study.  See, e.g., Forbes Deposition at Volume I, pp. 88, 89, 113-117, 139, 153- 154; see also Forbes Deposition at Volume II, pp. 164- 171, 176- 177, 184- 187, 189, 228- 232, 236- 238, 247, 253- 254, 267.

While the Plaintiff has applied the conclusory label of "learning" to the life activity in which she is allegedly limited, it is abundantly clear from her descriptions of the effects of her alleged disability, as well as her requests for accommodation, that the life activity which she is claiming is limited is ***test-taking***.[2]  "The specific task of taking timed tests, however, is not the kind of 'major life activity' protected under the ADA."  Baer v. Nat'l. Bd. of Med. Exam'rs, 392 F. Supp. 2d 42, 47 (D. Mass. 2005); accord Singh v. George Wash. Univ. School of Med. & Health Sci., 508 F.3d 1097, 1104 (D.C. Cir. 2007) ("test-taking itself is not a major life

_____

[2]  See also Ex. 16 to Deposition of Randall Vanessa Forbes (Petition for Readmission), stating, "I have . . . identified one major problem in my test taking ability.  My main difficulty is with the multiple-choice sections of the final examinations" and Forbes Deposition at Volume II, pp. 253- 254.

CASE NO.:  07-22502-CIV-HOEVELER
_____

activity").

The case of Singh, Id., is instructive.  As that court noted, not everyone who fails to complete a graduate school curriculum is "disabled":

> A restriction qualifies as "severe" only if it limits the impaired individual in the context of what "most people" do in their "daily lives." Thus Wong v. Regents of the University of California, 410 F.3d 1052 (9th Cir. 2005), in applying Toyota Motor [Mf'g, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002)], asked "whether plaintiff's impairment substantially limited his ability to learn as a whole, for purposes of daily living, as compared to most people," not whether he could "keep up with a rigorous medical school curriculum." Similarly, most Americans could not run a marathon, and few would regard someone who can run a marathon-but no further-as "severely restrict[ed]" in the major life activity of walking.

Singh at 1101 (citation omitted).  Thus, not all restrictions or failures to meet certain standards are "disabilities."

Moreover, as the Singh court went on to note, the correct standard of comparison is not what the plaintiff could do (or thinks she could do) if accommodated or unimpaired; the correct comparator is the average person in the general population.  Singh at 1100.

As the Singh court also noted:

> It is intuitively appealing to measure limitation by comparing the plaintiff's condition impaired with her own condition, unimpaired. There is something poignant, in some cases even tragic, in the plight of a person cut off from exceptional achievement by some accident of birth or history. But the ADA is not addressed to that plight. Rather, it is designed to enable the disabled, as a group, to participate in mainstream society . . . A plaintiff who, despite an impairment, can participate in all major life activities at the level of the average person in the general population neither is denied "independent living and economic self-sufficiency," nor burdens society with "dependency and nonproductivity," nor falls within the kind of "isolated and segregated" minority described by the statute's text. The ADA promotes equal opportunity for the disabled, but only after Toyota Motor's "demanding standard" is met.

CASE NO.:  07-22502-CIV-HOEVELER

_____

<u>Singh</u> at 1101- 02.  Thus, not everyone who cannot successfully complete law school exams, or law school, is "disabled."

Further, FORBES' testimony in this case directly supports the proposition that she believed that the alleged disability, and the appropriate accommodations for it, somehow changed when she matriculated at ST. THOMAS.  For instance, FORBES has acknowledged that she did not request "extended study breaks" at the University of Miami in her undergraduate studies.[3]  She has even testified that she sought the special accommodation of extended study breaks only at ST. THOMAS because, "Well, I wanted something to help me specifically for law school."  <u>See</u> Forbes Deposition at <u>Volume II</u>, p. 237.

That is not, however, how Act-defined disabilities (or accommodations) work.  As the <u>Singh</u> court also noted:

> any measure of substantial limitation that might change based on a plaintiff's particular educational environment-e.g., a comparison of medical students to their fellow students-would make disabled status vary with a plaintiff's current career choices, and would fail to achieve the ADA's additional purpose of providing "clear, strong, *consistent,* [and] enforceable standards" to address discrimination. 42 U.S.C. § 12101(b)(2)

<u>Singh</u> at 1103 (internal citation omitted) (emphasis in original).

This Court must strictly interpret the terms "substantially limits" and "major life activity."  <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams,</u> 534 U.S. 184, 195 (2002).  Here, the Plaintiff has alleged that her disability, i.e. PTSD, limits her ability to take tests.  Test-taking, however, is not a major life activity.  <u>Baer</u>, <u>Id.</u>, 392 F. Supp. 2d 47 (citations omitted).  "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need

---

[3]  The reasonableness or lack thereof of FORBES' requested accommodations is discussed *infra* at pp.

to demonstrate that the impairment limits a major life activity.  It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." Baer, Id., at  46.  (citations omitted).  "[P]oor performance on exams might also be attributable to numerous other factors, such as anxiety, stress, nervousness, cautiousness, poor organization, poor time management, lack of motivation, lack of appropriate preparation, or weakness in a particular subject matter." Id. at 47.

The Plaintiff has failed to make a sufficient showing on her claims that she is disabled for purposes of either Act, as opposed to simply not good at taking law school exams, and the Defendant is thus entitled to a summary judgment in its favor as a matter of law.  Celotex Corp. v. Catrett, Id., 477 U.S. at 323.

### Even Assuming Forbes Suffered from a Disability Within the Meaning of the Acts, St. Thomas Made Reasonable Modifications and Accommodations

Even assuming, however, that the Plaintiff could be considered "disabled" under either or both of the Acts, she cannot prevail on any claim that ST. THOMAS failed to reasonably accommodate her disability; therefore, the Defendant is entitled to judgment as a matter of law on her claims.

Under both the ADA and the Rehabilitation Act, a covered entity (including an entity receiving Federal financial assistance) is required to provide reasonable modifications or reasonable accommodations of their rules, policies, practices and procedures when necessary to avoid discrimination against a person on the basis of a disability.  Innovative Health Sys. v. City of White Plains, 931 F. Supp. 222, 239 (S.D.N.Y. 1996).  An accommodation is reasonable if it does not cause any undue hardship or fiscal or administrative burdens, or does not undermine the basic purposes it seeks to achieve.  Id.

A public entity must "make reasonable modifications in policies, practices, or procedures

when the modifications are necessary to avoid discrimination on the basis of disability." Zukle v. Regents of University of California, 166 F.3d 1041, 1046 (9th Cir. 1999) (quoting 28 C.F.R. § 35.130(b)(7)).  The Acts do not require an academic institution "to make fundamental or substantial modifications to its programs or standards," however. Id.  The Acts create "a duty to 'gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary to enable [the individual to meet the standards in question]. ' " Buckingham v. United States, 998 F.2d 735, 740 (9th Cir. 1993) (quoting Mantolete v. Bolger, 767 F.2d 1416, 1423 (9th Cir. 1985)).

"The ADA requires a provider of a public accommodation to modify its program to accommodate the needs of a disabled person unless such a modification will substantially alter the nature of the program or such a modification constitutes an undue burden." Amir v. St. Louis Univ., Id., 184 F.3d at 1028 (citing Roberts v. Kindercare Learning Ctrs., Inc., 86 F.3d 844, 846 (8th Cir. 1996)).[4]  "When the accommodation involves an academic decision, courts should show great respect for the faculty's professional judgment." Amir, Id., (quoting Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985)).

It is undisputed that the Plaintiff was provided additional time to take her exams.  See Forbes Deposition at Volume I, pp. 134, 154; see also Forbes Deposition at Volume II, pp. 167, 174, 184, 200, 205, 224, 227, 236, 267- 68.  More specifically, she was provided time-and-a-half for all examinations.  Id.  See also Exs. 5, 9, 10, 11, and 12 to Deposition of Randall Vanessa Forbes.

It is also undisputed that FORBES was allowed to take her final exams (for the Spring

_____

[4]  The ADA defines a "public accommodation" as a private entity affecting commerce, including "a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education."  See 42 U.S.C. § 12181(7)(j).

CASE NO.:  07-22502-CIV-HOEVELER
_____

2007 semester, the only semester for which she requested accommodations) in a reduced/limited distraction environment.  See Exs. 5, 9, 10, 11, and 12 to Deposition of Randall Vanessa Forbes. In her case, that meant a classroom with only two to four other students, and a proctor.  See Forbes Deposition at Volume II, pp. 174, 183- 84, 201, 227- 28.

This, however, failed to satisfy Forbes, who has continually focused her complaints on ST. THOMAS' "failure" to allow her to take her law school exams alone—with no other students and with no proctor in the room.  See Forbes Deposition at Volume I, p. 113; and Forbes Deposition at Volume II, pp. 167, 169, 172, 176, 184, 185, 186, 221- 222, 236.  See also Ex. 6 to Deposition of Randall Vanessa Forbes (Apr. 17, 2007, email reciting, in part, "The proctor would be outside of the actual room.  I would really appreciate it if you would provide the same accommodations this semester.  Particularly the separate isolated location") and Plaintiff's Third Amended Complaint, DE #30, at pp. 12- 13, ¶¶66 (alleging that Defendant failed to accommodate FORBES because it did not "allow her to take her exams in a private room, alone.")

Still, FORBES has acknowledged that "there is no such thing as no distraction," and that, even alone, she still suffers from "all those symptoms of PTSD."  See Forbes Deposition at Volume I, p. 89.  She notes that, in college, she did "okay" on exams that she took in the presence of other persons, "[j]ust not as good as [she] could have."  Id.  Nevertheless, she faults ST. THOMAS for not allowing her to take her law school examinations in a room with no supervision and no other students, totally alone, which, she claims, would have been the only "reduced distraction" accommodation that fit the bill.  She has claimed that a room with three or four students and a proctor is not a room with limited distractions.  See Forbes Deposition at Volume II, p. 184.  In her view, both a typical classroom test setting, and a room with just three

CASE NO.:  07-22502-CIV-HOEVELER
_____

or four students and a proctor, are equally "unsuitable" settings for her to take tests.  See Forbes Deposition at Volume II, p. 186.

Thus, the *sole* basis on which the Plaintiff is asserting a claim under the Acts appears to be that ST. THOMAS failed to provide her with an empty classroom in which to take her tests.[5] This Court must then determine whether ST. THOMAS' decision to provide the Plaintiff with a room with limited distractions, versus an empty classroom with no proctor supervision, constitutes a "failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. Section 12181(b)(2)(A)(ii).[6]

_____

[5]  FORBES *subsequently* came up with an additional accommodation she believed would help her on exams—extended breaks, in which the time for her exam would not run while she was on a break (thus, presumably, giving her an unlimited length of time within which to complete an examination).  See Forbes Deposition at Volume I, p. 114; see also Forbes Deposition at Volume II, pp. 238- 239.  She has testified that she told Dean Hernandez at the law school that she desired extended breaks (See Forbes Deposition at Volume I, pp. 132- 33), an accommodation she had *not* received at the University of Miami (See Forbes Deposition at Volume II, p. 237).  At the time she requested testing accommodations from ST. THOMAS, she did *not* request the classroom accommodations she has also subsequently thought of which she believes might help her:  being allowed to record the class session; being given a "head's up" before being called on in class discussion; being allowed extra time to answer any question that might be posed to her; and having a prepared script to read from if she was called on in class to speak or to answer a question.  See Forbes Deposition at Volume I, pp. 114- 116; p. 133.

[6]  Plaintiff does allege, in one paragraph of her Third Amended Complaint, that "[t]he Defendant violated the Rehabilitation Act by denying Plaintiff's Readmission solely for the reason of her disability."  See Plaintiff's Third Amended Complaint, DE #30, at p.16, ¶82.  Because this claim is based solely on the Rehabilitation Act, and because it relates to an academic decision of the School, the court should show great respect for the Academic Standing Committee's professional judgment on the matter, and Plaintiff must prove that the *sole* impetus for the School's decision not to readmit her—after she had twice failed to meet the minimum academic requirements, and when her petition for readmission made *no* mention of reasonable accommodations for her alleged disability (see Forbes Deposition at Volume II, p. 261 and Ex. 16 to Deposition of Randall Vanessa Forbes)—was, in fact, her alleged disability.  See, e.g., Amir v. St. Louis Univ., Id., 184 F.3d at 1028 ("When the accommodation involves an academic decision, courts should show great respect for the faculty's professional judgment.") and 1029 n.5 ("Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's

The School's decision not to allow FORBES to take her law school examinations in an otherwise empty room was not, though, a failure to provide reasonable accommodations.

> Prohibited discrimination under the ADA includes "a failure to make reasonable modifications in policies, practices, or procedures" so as to accommodate the participation of individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii). A disabled individual, however, is not entitled to whatever modification he thinks might accommodate his limitations. Nor is he entitled to obtain an advantage over his non-disabled peers. Rather, the ADA mandates that places of public accommodation make only those reasonable modifications that are *necessary* to give a disabled individual the same opportunity to obtain the offered benefit that he would have had were it not for the limitations caused by his disability-and, even then, only to the extent that the necessary modifications *would not fundamentally alter* the nature of that benefit. *See id.* (stating that a failure to make reasonable modifications is actionable discrimination whenever "such modifications are necessary to afford ... goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, *unless* the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations") (emphasis supplied).

Long v. Howard Univ., 439 F. Supp. 2d 68, 75- 76 (D.D.C. 2006) (emphases in original) (footnote omitted).  This language is instructive here, where FORBES has asserted that she is entitled to whatever modifications she believes might accommodate her alleged limitations— including the modification of taking a test in an otherwise empty room, unsupervised—a modification she was not granted in her previous schooling, nor on the LSAT.  Clearly, taking a test in an empty room could allow FORBES to gain an advantage over her non-disabled peers (distractions during test-taking being a common annoyance, and cheating in the absence of a

_____

adverse action against the plaintiff") (emphasis in original).  FORBES has come forward with *no* evidence to support the conclusory allegation made in ¶82 of her Third Amended Complaint, other than her own self-serving testimony that one of the professors on the Academic Standing Committee told her not to mention the supposed lack of reasonable accommodations for her alleged disability, and the impact of that on her academic failings.

proctor of course being a possibility).  Just as clearly, her requested accommodation of taking her tests alone and unsupervised would fundamentally alter the nature of law school, law school exams, and law school grading.

Indeed, the accommodation most sought by FORBES—being allowed to take her tests alone in an otherwise empty room—not only would fundamentally alter the nature of the law school's services, facilities, privileges, and accommodations, it is simply not "reasonable" within the meaning of the Acts.  FORBES apparently believes that she would do better taking her law school exams in an empty classroom than she would in the allegedly "unsuitable" modified environment of a limited-distraction test-taking environment with several other students present.  However, it would not be reasonable to expect the School to provide a classroom and a proctor[7] just or primarily for the benefit of one individual.  The School's already-extent procedure of accommodating learning-disabled and other disabled students in a limited-distraction setting is more than reasonable.

"The obligation to make reasonable accommodation does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability."   Harnett v. Fielding Graduate Inst., 400 F. Supp. 2d 570, 576 (S.D.N.Y. 2005) (citation omitted), *disapproved of on other grounds by* Harris v. Mills, 572 F.3d 66 (2d Cir 2009).  ST. THOMAS was under no obligation to make any further accommodations solely for the personal benefit of FORBES.  Her requested accommodation of a room alone to take a test in was not reasonable.

---

[7]   Although FORBES actually asserts that her exams should, ideally, be un-proctored, she has speculated that if she were in a room "mostly enclosed in glass," the proctor could be outside the room she was in, watching her from the outside.  See Forbes Deposition at Volume II, pp. 176-177.  Either scenario (an un-proctored law school exam, or the hiring of a proctor and the setting aside of a glass-enclosed room for one student) is unreasonable.   Additionally, of course, allowing an un-proctored exam would fundamentally alter the services offered by the School.

CASE NO.:  07-22502-CIV-HOEVELER
_____

**<u>Plaintiff Never Proposed Reasonable Accommodations</u>**
**<u>Nor Presented Evidence of the Medical Need for Same</u>**

FORBES never proposed any reasonable accommodations, backed by medical evidence or testimony, that ST. THOMAS should implement.  She merely attached to her petition for readmission (Ex. 16 to Deposition of to Deposition of Randall Vanessa Forbes) a letter from Dr. Lydia Kalsner-Silver, a psychologist (Ex. 18 to Deposition of to Deposition of Randall Vanessa Forbes).  That letter contained *no* findings of medical tests conducted on FORBES, *no* clinical diagnosis, and, most notably, *no* recommendations for any specific accommodations to be implemented as reasonably necessary to accommodate FORBES' alleged disability.  The letter is simply insufficient under the law.

The psychologist's letter merely recites FORBES' self-reported symptoms, and notes that they are "consistent with a diagnosis Post Traumatic Stress disorder" [sic].  Dr. Kalsner-Silver states, conclusorily, "[a]ll of these symptoms have no doubt had an adverse impact on Ms. Forbes's academic performance."  The letter ultimately states, somewhat equivocally, "[w]ith proper psychiatric care and ongoing counseling,[8] it is my opinion that Ms. Forbes could potentially function more effectively as a law student."  In other words, the psychologist made *no* recommendations as to the type of accommodations FORBES would need for testing (or, indeed, for classroom study).  <u>See</u> Forbes Deposition at Volume II, p. 270.

None of Kalsner-Silver's opinion, based on FORBES' self-reported symptoms, meets the criteria for obtaining accommodations on the basis of a properly-documented, existing "disability."  Of course, as noted above, "[m]erely having an impairment does not make one

_____

[8]  Cutting somewhat against this suggestion that FORBES might be able to function effectively as a law student, however, is Dr. Kalsner-Silver's note that "[d]espite her emotional distress, Ms. Forbes has not received mental health counseling since terminating therapy over a year ago . . . She also reports that she has never been evaluated by a psychiatrist, which is essential, in my opinion, for tailoring medication to a patient's needs."  (Ex. 18 to Deposition of to Deposition of Randall Vanessa Forbes).

CASE NO.: 07-22502-CIV-HOEVELER

_____

disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits

a major life activity.  It is insufficient for individuals attempting to prove disability status under

this test to merely submit evidence of a medical diagnosis of an impairment." Baer v. Nat'l Bd.

of Med. Exam'rs, Id., 392 F. Supp. 2d at 46 (citations omitted).  All Kalsner-Silver's letter did

was document an impairment.

In order to receive accommodations, FORBES was obliged to present some medical or

expert opinion or documentation to the School detailing exactly what accommodations were

necessary to accommodate her PTSD, and detailing how those requested accommodations would

in fact accommodate her alleged disability, and explaining why the already-existent

accommodations were insufficient.  Cf. Stern v. Univ. of Osteopathic Med. & Health Sci., Id.,

220 F.3d 906 at 908 ("Mr. Stern was obliged to present expert evidence that the testing scheme

that he requested was actually related to his disability and, furthermore, provided a benefit not

available from the accommodations that the medical school did offer to him").  FORBES simply

failed to do what she was required and obliged to do to request and to show the necessity of

reasonable accommodations.

The burden of proving the necessity of modifications is allocated to the plaintiff.  See

Long v. Howard Univ., 439 F. Supp. 2d at 77, n.5.  Additionally, the student bears the initial

burden of demonstrating that she requested reasonable accommodations.  Mershon v. St. Louis

Univ., 442 F.3d 1069, 1077 (8th Cir. 2006).  The student also bears the initial burden of showing

that reasonable accommodations would render her qualified for the program.  Mershon, Id., at

1078.  FORBES has simply failed to meet any of these burdens, and therefore ST. THOMAS is

entitled to a judgment as a matter of law on her claims of discrimination and failure to

CASE NO.: 07-22502-CIV-HOEVELER

_____

accommodate.[9]

## **CONCLUSION**

Based upon all of the foregoing, the Defendant is entitled to summary judgment as a matter of law. FORBES has failed to make out essential elements of her claims alleging violations of the Americans with Disabilities Act (42 U.S.C. §12101, *et seq.*), and discrimination under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et seq.*). She has not shown and cannot show that ST. THOMAS failed to reasonably accommodate her. Nor has she even shown that, for purposes of either the ADA or the Rehabilitation Act, she is disabled by a physical or mental impairment that substantially limits one or more of her major life activities. FORBES therefore is not entitled to any of the relief she seeks (reinstatement; refund of tuition and fees, with interest; compensatory and other damages; and attorney's fees and costs). Thus, ST. THOMAS is entitled to judgment as a matter of law in its favor on all of Plaintiff's claims.

WHEREFORE the Defendant, ST. THOMAS UNIVERSITY, INC., moves this Honorable Court for the entry of an Order of Final Summary Judgment as to all claims of the Plaintiff RANDALL VANESSA FORBES as set forth in her Third Amended Complaint, granting final judgment to the Defendant ST. THOMAS UNIVERSITY, INC., and granting all other and further relief this Honorable Court deems just and equitable.

_____

[9] Indeed, far from revealing that FORBES requested but was denied reasonable accommodations, and that she was otherwise qualified for the program, the facts and FORBES' own deposition testimony show that: she requested accommodation (albeit late, and without the proper documentation and substantiation) for her exams in the Spring semester; she *was* nevertheless provided accommodations; she availed herself of the offered accommodations and did not contemporaneously complain about their adequacy; and, only after failing to meet the objective, across-the-board, minimum grade requirements for continued enrollment in law school did she complain about the sufficiency of the accommodations. Of course, if dissatisfaction with exam results were an acceptable factual basis for a claim of discrimination, every student that was academically dismissed from a law school could subsequently raise an actionable discrimination claim.

CASE NO.:  07-22502-CIV-HOEVELER
_____

### <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that on October 27, 2009, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record: Emily Joyce Phillips, Esq., Phillips Lanier, One Biscayne Tower Suite 1684, 2 S Biscayne Boulevard, Miami, FL 33131 (email: ephillips@phillipslanier.com), via transmission of Notice of Electronic Filing generated by the CM/ECF system.

J. PATRICK FITZGERALD, P.A.     GAEBE MULLEN ANTONELLI ESCO & DIMATTEO
Co-Counsel for Defendant          Attorneys for Defendant
110 Merrick Way, Suite 3-B         420 South Dixie Highway, 3rd Floor
Coral Gables, FL  33134             Coral Gables, FL  33146
Tel:  (305) 443-9162                Tel:  (305) 667-0223
Fax: (305) 443-6613                 Fax:  (305) 284-9844

By:       /s/ *Anne C. Sullivan*
MICHAEL A. MULLEN
Florida Bar No.:  305731
mmullen@gaebemullen.com
MAXIMO A. SANTIAGO
Florida Bar No.:
msantiago@gaebemullen.com
ANNE C. SULLIVAN
Florida Bar. No.:  0888621
asullivan@gaebemullen.com