UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 07-22502 – CIV HOEVELER
MAGISTRATE JUDGE BROWN

RANDALL VANESSA FORBES,

      Plaintiff,

v.

ST. THOMAS UNIVERSITY, INC.,

      Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff, RANDALL VANESSA FORBES, (hereinafter "Forbes"), by and through her undersigned counsel, files her Plaintiff's Response to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law in Support Thereof, and states as follows:

### The Standard for Summary Judgment

Summary judgment is appropriate only when all the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. F.R.C.P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Selenke v. Med. Imaging of Colo.,* 248 F.3d 1249 (10th Cir. 2001). When the Court examines the facts and allegations that are set forth in the Plaintiff's Third Amended Complaint in a light that is the most favorable to the Plaintiff, and

accepts all of her allegations as true, the Defendant's Motion for Summary Judgment

must be denied because genuine issues as to material facts do exist.

1. **Defendant's Motion for Summary Judgment should be Denied with respect to Plaintiff's Claims for Violations of the Americans with Disabilities Act and the Plaintiff's Claims of Discrimination under the Rehabilitation Act because material issues of genuine fact exist as to whether or not Plaintiff suffers from a disability and whether Defendant discriminated against her for her disability.**

The Americans with Disabilities Act (ADA) prohibits discrimination against

a qualified individual with a disability on the basis of a disability. A violation

under the ADA is distinct from the violation of the Rehabilitation Act, which

requires that the discrimination be "solely" on account of the disability. *Compare*

42 U.S.C. §12182(a)(ADA), *with* 29 U.S.C. §794(a)(2000) Rehabilitation Act.

Because law schools receive federal funding, students are covered by the ADA

and the Rehabilitation Act. Students can and do sue under both laws. *Bartlett v.*

*N.Y. St. Bd. Of L. Examrs.,* 226 F.3d 69 (2d Cir. 2000).

As the Defendant stated, to prevail on a claim under Title III of the ADA, a

Plaintiff must prove that (a) she has a disability within the meaning of the ADA,

(b) she was discriminated against by defendant on the basis of her disability, and

(c) such defendant owns, lease (or leases to), or operates a place of public

accommodation. *Bowers v. Nat'l Collegiate Athletic Ass'n,* 9 F.Supp 2d 460

(D.N.J. 1998).

To prevail on a claim under Section 503 of the Rehabilitation Act, a

plaintiff must establish that: (1) she is disabled; (2) she is otherwise qualified for

participation in the program at issue; (3) she is being excluded from participation

in, being denied the benefit of, or being subjected to discrimination by the

2

program solely because of her disability; and (4) the program in question is receiving federal financial assistance. *L.M.P. ex rel E.P. v School Bd. Of Broward County, Fla.,* 516 F.Supp.2d 1294 (S.D. Fla. 2007).

The definition of a "disability" within both the ADA and the Rehabilitation Act are the same, which is a physical or mental impairment that substantially limits one or more major life activities of an individual. Major life activities include reading and learning. *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141 (1st Cir. 1998). Other courts have held that reading is a "major life activity." *Bartlett v. New York State Bd. Of Law Exam'rs,* 226 F.3d 69 (2d Cir. 2000). Learning, studying, and concentrating are certainly major life activities that are central to the importance of daily life – especially to the life of a student. *Baer v. Nat'l. Bd. Of Med. Exam'rs,* 392 F.Supp.2d 42 (D.Mass.2005).

In the case at bar, the Defendant admits in its Motion for Summary Judgment [DE #56] that the Plaintiff suffers from Post Traumatic Stress Disorder ("PTSD") due to being sexually assaulted in high school and college. The Plaintiff alleges the same in her Third Amended Complaint ¶15, and that her ability to learn, study, and concentrate have been impaired. The Plaintiff also testified during her deposition about her PTSD and how it impairs her ability to learn, study and concentrate, which are major life activities for a student and protected under the ADA and Rehabilitation Act. Because the Plaintiff has produced sufficient evidence of her disability, and such evidence is to be viewed in the light most favorable to the Plaintiff, the Plaintiff's ADA and Rehabilitation Act claims are sufficient to survive the Defendant's Motion for Summary

3

Judgment. Because the Defendant admits in its Motion for Summary Judgment that the Plaintiff suffers from PTSD, a genuine issue of material fact exists as to whether or not this disability substantially limits any of her major life activities, and therefore summary judgment is not proper.

## 2. Plaintiff suffers from a Disability within the meaning of the ADA and the Rehabilitation Act.

As the Defendant states in its Motion for Summary Judgment [DE #56], the ADA and Rehabilitation Act define an individual's disability as: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. See 42 U.S.C. 12102(1). As Defendant goes on to acknowledge, "major life activities" include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, *learning, reading, concentrating*, thinking, communicating, and working. 42 U.S.C. §12102 (2).

Plaintiff readily agrees with the Defendant's recitation of the law, and as Plaintiff cited in its earlier Response to Defendant's Motion to Dismiss and Strike [DE # 41], major life activities include reading and learning. *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141 (1st Cir. 1998). Other courts have held that reading is a "major life activity." *Bartlett v. New York State Bd. Of Law Exam'rs,* 226 F.3d 69 (2d Cir. 2000). Learning, studying, and concentrating are certainly major life activities that are central to the importance of daily life – especially to the life of a student. *Baer v. Nat'l. Bd. Of Med. Exam'rs,* 392 F.Supp.2d 42 (D.Mass.2005).

4

Plaintiff alleges that her PTSD "has impaired one or more of her major life activities, including but not limited to learning, studying and concentrating on issues." Third Amended Complaint ¶63.   The Plaintiff testified during her deposition that her disability impaired her ability to read and concentrate.  Forbes Deposition at Volume 1, pp. 45-46.[1]  Plaintiff also requested from John Hernandez that she be given special accommodations while in the classroom, like recording the professor's lectures, but John Hernandez summarily denied that request.  The Plaintiff did not only testify that her test taking abilities have been impaired, she also testified during her deposition that she has been impaired in many other ways as well, including learning, studying and concentrating.  The Plaintiff must make extraordinary efforts to concentrate and not be distracted because she suffers from PTSD.

The Defendant is contradicting itself in its Motion for Summary Judgment [DE #56], because it readily admits and sets forth in its motion that "learning, reading, and concentrating" are major life activities pursuant to the ADA and Rehabilitation Act, but then goes on to argue Plaintiff doesn't suffer from a disability within the meaning of the ADA or the Rehabilitation Act, when Plaintiff has clearly testified as to her difficulties with "learning, reading and concentrating."   Defendant also acknowledged the Plaintiff suffers from some sort of disability within the meaning of the ADA by accommodating her in the first place.  When the Court examines the facts and allegations that are set forth in the Plaintiff's Third Amended Complaint and other evidence in the light that is the most favorable to the Plaintiff, the Defendant's Motion for Summary Judgment must

---

[1] "Answer: My parents made me go see Papazian.  I was agitated easily and had problems focusing.  I couldn't even read a book.  I had some kind of sleeping problems.  I had anxiety problems.  I had even speech problems a little bit. Like I got nervous, I didn't want to talk over the phone.  I needed – I didn't really go anywhere unless my parents made me go.  I hate to admit it, but I had hygiene problems.  Question: Okay. Anything else?  Answer: Really just the concentration.  Oh, and the eating issues. Forbes Deposition Volume 1, pp. 45-46.

be denied because genuine issues of material fact exist as to whether or not the Plaintiff's disability impairs one or more of her major life activities. This is a question of fact to be determined by a jury.

### 3. Reasonable minds can disagree about whether St. Thomas made reasonable modifications and accommodations for the Plaintiff.

Genuine issues of material fact exist as to whether or not the Defendant failed to provide the Plaintiff with reasonable accommodations while she was a student at St. Thomas University School of Law. First of all, St. Thomas did not provide enough information to the Plaintiff about what she needed to do in order to get the accommodations.[2]  Each school should have an established process for determining whether a student is entitled to an accommodation and what accommodations are reasonable. This information should be included in the law school's handbook.

Defendant alleges that Plaintiff did not claim in her written petition for readmission into law school or at the subsequent hearing that she performed poorly on her exams because she was not given adequate testing accommodations. However, the Plaintiff testified during her deposition that she did not raise the issue at that time because she was advised by Professor Jay Silver not to do so at that time.

Once St. Thomas was made aware of the disability and of Plaintiff's requests, it was incumbent upon St. Thomas to ask for any further information from the Plaintiff if it felt it needed to justify an accommodation. *Taylor v. Phoenixville School District,* 184 F.3d 296 (3d. Circuit 1999).   Once the school knows of the student's disability and the student's desire for accommodations, burden is on the school under the ADA to request

---

[2] Forbes Deposition Volume 1, pp. 97: Question: Were disability guidelines discussed at all during the orientation? Answer: No. Q: Was there any material that was handed out with respect to the guidelines for students with disabilities or special accommodations, anything like that? A: No.

additional information that the school believes it needs.  42 U.S.C.A. § 12112(b)(5)(A).

The Defendant acknowledged the Plaintiff's disability by accommodating her and giving

her time and a half on the exams, and permitting her to take her exams in a room with

fewer students.  If the Defendant needed additional information from the Plaintiff, it was

the Defendant's responsibility to request it.

 When granting accommodations, it is critically important that the school follow its

own procedures and that the inquiry focus on the individual's particular circumstances.

*Childress v. Clement*, 5 F. Supp. 2d 384 (E.D. Va. 1998).  Because of Plaintiff's PTSD,[3]

she requested that she be able to take exams alone in a room, an accommodation

which was granted to her during her undergraduate studies at the University of Miami.

The Plaintiff was usually permitted to take her exams in the professor's office.  While a

student at St. Thomas, the Plaintiff could have easily taken her exams in one of the

seven study rooms in the law library, and a proctor could have easily stood outside to

monitor her and ensure that she was not cheating or plagiarizing during the exam.

Although the Plaintiff was placed in a room with fewer people, one of the proctors

stopped the exam to offer chocolates.  The proctors were pacing the room during the

exams as well.

 For an individual who suffers from PTSD, such distractions had a serious impact

on her ability to concentrate on taking examinations.  Whether a requested

accommodation would create an undue burden depends in part on the nature and cost

---

[3] Forbes Deposition Volume 1, pp. 100: Question: How many panic attacks did you have during your first semester in law school? Answer: A lot.  Q.  What is a lot? A. Frequently.  Q. Okay.  What is frequent?  How many days or – let's do it this way:  Would you experience panic attacks everyday?  A. I would say almost everyday.  Q.  In a week, how many days in the week would you say you would experience panic attacks? A. Maybe five or six.  Q. And we are talking only about the first semester.  A. Okay.  Q.  What is a panic attack?  Explain that to me.  A. Well, for me, it kind of paralyzes me is the best way to put it.  it kinds of makes me sweat a lot.  It could be cool.  I hear my heartbeat like ringing in my ears.  And it's just you can't really breathe.  You think you are having a heart attack, but you are not.  It's just a panic attack.

of the accommodation, and the financial resources of the school or university.  28

C.F.R. § 36.104 (2005).  Any accommodation that would place an undue administrative

or financial burden on the school would not be required; however, Ms. Forbes hadn't

requested an accommodation that would have unduly burdened St. Thomas or cost

them an excessive amount of money to facilitate.  The Plaintiff has alleged and testified

that her anxiety and panic increase when she is in close proximity with others, and this

is the reason why she requested that she be placed in a room alone for to take her

examinations.  Genuine issues of material fact exist as to whether the Defendant failed

to accommodate Plaintiff with her disability and make adequate accommodations.

In fact, Dean John Hernandez never even told the Plaintiff of what she needed to

do to obtain adequate accommodations.  Further, the Plaintiff was advised by Peter

Kelly, one of the Defendant's employees, that she was in fact dismissed from St.

Thomas "because of her disability."  Forbes Deposition Volume 2, pp. 282-285.

Genuine issues as to material fact exist as to whether such an accommodation is

reasonable given the Plaintiff's disability, especially when the accommodation sought by

the Plaintiff was not one which would have placed an unreasonable burden upon the

Defendant.    Accordingly, genuine issues of material fact exist as to whether or not St.

Thomas made reasonable accommodations to this particular Plaintiff.  Accordingly, the

Defendant's Motion for Summary Judgment should be denied.

## 4. Plaintiff Did Propose Reasonable Accommodation to St. Thomas and Provided Medical Evidence of her Disability

St. Thomas alleges that "Forbes never proposed any reasonable

accommodations, backed by medical evidence or testimony that St. Thomas should

implement." See Defendant's Motion for Summary Judgment [DE#56], p.18.  However,

St. Thomas has expressly admitted it had knowledge of Ms. Forbes PTSD. It even considered documentation provided by Ms. Forbes of her diagnosis in the University of Miami memorandum dated August 9, 2004, that detailed the accommodations she had received at the University of Miami. This memorandum was produced to St. Thomas in order to support Ms. Forbes reasonable proposal for accommodations.

St. Thomas also acknowledged that the Plaintiff suffered from a disability by accommodating her with time and a half on her examinations and providing her with a room with limited distractions. St. Thomas' acknowledgement that Plaintiff didn't produce evidence of her medical needs is not supported by the factual evidence or St. Thomas' own admissions.

Because St. Thomas had enough information to be put on notice that Ms. Forbes had PTSD, it was incumbent on the university to ask for any further information if it felt it was needed in order to justify an accommodation. *See Taylor v. Phoenixville School District*, 184 F.3d 296 at 315 ("Once the employer knows of the disability and the employee's desire for accommodations, it makes sense to place the burden on the employer to request additional information that the employer believes it needs. Disabled employees, especially those with psychiatric disabilities, may have good reasons for not wanting to reveal unnecessarily every detail of their medical records because much of the information may be irrelevant to identifying and justifying accommodations, could be embarrassing, and might actually exacerbate workplace prejudice."

The record indicates that St. Thomas was aware that Ms. Forbes had a disability – or that Ms. Forbes might have had a disability – and that St. Thomas has failed to ask Ms. Forbes for any further information in order to justify an accommodation. Wherefore,

9

genuine issues of material fact exist as to whether Plaintiff did propose reasonable accommodations and provided medical evidence of the same, and accordingly Defendant's motion for summary judgment shall be denied.

## CONCLUSION

When ruling on a motion for summary judgment, the Court must consider the facts in the light most favorable to the Plaintiff. *Wright-Simmons v. City of Okla. City,* 155 F.3d 1264 (10th Cir. 1998). If the Court accepts all of the allegations raised in Plaintiff's Third Amended Complaint [DE #54] as true, and considers all other evidence in the light most favorable to the Plaintiff, genuine issues of material fact exist as to whether or not St. Thomas discriminated against Forbes as a result of her disability, for which she is protected individual under the ADA and the Rehabilitation Act, and whether or not she is entitled to recovery under the same. Because genuine issues of material fact do exist, summary judgment is not proper and the Defendant's Motion for Summary Judgment must be denied in full.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 23, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

10

/s/  Emily Joyce Phillips
EMILY JOYCE PHILLIPS (FB 0597961)
ephillips@phillipslanier.com
PHILLIPS LANIER
One Flagler Building
14 NE 1st Avenue, 2nd Floor
Miami, FL 33132
T. 305.350.5299
F. 786.431.2324
**SERVICE LIST**

Michael A. Mullen FL Bar No. 305731
Email: mmullen@gaebemullen.com
Gaebe Mullen Antonelli Esco & DiMatteo
420 S. Dixie Highway, 3rd Floor
Coral Gables, FL 33143
T. 305.667.0223
F. 305.284.9844
Attorneys for Defendant


J. Patrick Fitzgerald FL Bar No. 248681
Email:  jpf@jpfitzlaw.com
J. Patrick Fitzgerald, P.A.
110 Merrick Way, Suite 3-B
Coral Gables, FL 33134
T. 305.443.9162
F. 305.284.9844
Co-Counsel for Defendant