UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-22502-CIV-HOEVELER

RANDALL VANESSA FORBES,

    Plaintiff,

v.

ST. THOMAS UNIVERSITY, INC.,

    Defendant.

_____/

## DEFENDANT'S *RENEWED* MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, ST. THOMAS UNIVERSITY, INC. (hereinafter "ST. THOMAS" or "the School"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.5.A, and this Court's Order Denying Summary Judgment (DE #89, 9/30/10) files this its Renewed Motion for Final Summary Judgment and Incorporated Memorandum of Law in Support Thereof, and states as follows:

1. On October 27, 2009, the Defendant filed its Motion for Final Summary Judgment and Incorporated Memorandum of Law in Support Thereof (DE #56, 10/29/09), seeking judgment in its favor on all claims brought by RANDALL VANESSA FORBES (hereinafter "Plaintiff," "FORBES").

2. Following a Response and a Reply, oral argument was set by the Court and the matter was heard June 18, 2010, in chambers.

3. This Court's Order Denying Summary Judgment (DE #89) issued September 30, 2010. In the Order, the Court noted that St. Thomas could file "a renewed motion for summary judgment within 45 days with additional support of its positions." (DE #89, p. 25)

4. This Renewed Motion is filed in accordance with that Order. In particular, this

Renewed Motion is filed to supplement the record in support of the Motion for Final Summary Judgment.

5.      All arguments and positions set forth in the original Motion for Final Summary Judgment and Incorporated Memorandum of Law in Support Thereof (DE #56, 10/29/09) are hereby adopted.

6.      As a further showing that it is entitled to summary judgment on Forbes' claims, ST. THOMAS states the following:

### MEMORANDUM OF LAW

**Standard for Granting Summary Judgment**

A party against whom a claim, counterclaim or cross-claim is asserted may move at any time for a summary judgment in the party's favor as to the entire claim.  Fed.R.Civ.P. 56(b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  "The moving party is entitled to a judgment as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"The non-moving party's burden  . . . is not lessened by the movant's initial burden. Accordingly, once the movant has demonstrated that an essential element of the non-moving party's case is lacking, the non-moving party must offer proof sufficient to establish the existence of the essential element or else the district court will be required to grant the movant's motion for summary judgment." Antenor v. D&S Farms, 866 F. Supp. 1389, 1395 (S.D. Fla.

1994), *rev'd on other grounds* by 88 F.3d 925.

## ARGUMENT

### Forbes Did Properly Document Her Alleged Disability, Nor Properly Request Accommodations

FORBES never presented any documented disability to the School.  She never presented any expert's report laying out what recommendations for accommodations the expert would have suggested.  This was FORBES' burden to meet, and she did not.  Before and during her first semester at the Law School, FORBES did not formally request any special accommodations.  See Deposition of Randall Vanessa Forbes at Volume I, pp. 131- 32; p. 152.  During her second semester, she informed the School, through Dean John Hernandez, that she suffered from PTSD, and requested special testing accommodations.  See Plaintiff's Third Amended Complaint, DE #30, at p. 4, ¶¶16- 18, ¶22.

FORBES met with Dean John Hernandez in the early part of the second semester.  See Deposition of John Hernandez at p. 18.  The concerns FORBES presented to Dean Hernandez were not limited to testing accommodations, or an alleged disability.  Id.  It is the student's responsibility to document her alleged disability.  See Deposition of John Hernandez at pp. 19- 20; see also Affidavit of John Hernandez at ¶¶ 12 and 13; and Special Accommodations Guidelines (pp. 3- 4).  Sometimes, however, a student may be provided "provisional" accommodations that provide some accommodations even in the face of incomplete, inadequate or untimely documentation with a direction that such provisional accommodation will expire in the next testing cycle unless the student provides more adequate documentation.  See Affidavit of John Hernandez at ¶ 19.  The School in this instance chose to provide FORBES with provisional accommodations.  See Ex. 5 to Deposition of Randall Vanessa Forbes.

Thereafter, FORBES never proposed any reasonable accommodations, backed by medical or other findings, that ST. THOMAS should implement.  She never thereafter presented

a documented disability.  FORBES did nothing that would have allowed ST. THOMAS to implement more permanent accommodations, because she did not provide adequate documentation.

Indeed, it was not until *after* exams and *after* FORBES was dismissed that she came forward with anything resembling "documentation."  Even then, however, she merely attached to her petition for readmission (Ex. 16 to Deposition of to Deposition of Randall Vanessa Forbes) a letter from Dr. Lydia Kalsner-Silver, a psychologist (Ex. 18 to Deposition of Randall Vanessa Forbes).  That letter contained *no* findings of medical tests conducted on FORBES, *no* clinical diagnosis, and, most notably, *no* recommendations for any specific accommodations to be implemented as reasonably necessary to accommodate FORBES' alleged disability.  The letter is simply insufficient to function as either a diagnosis or documentation (because it merely recites FORBES' self-reported symptoms, and notes that they are "consistent with a diagnosis Post Traumatic Stress disorder" [sic]) or a recommendation (because it makes none).  None of Dr. Kalsner-Silver's opinion, based on FORBES' self-reported symptoms, meets the criteria for obtaining accommodations on the basis of a properly-documented, existing "disability."

The burden of proving the necessity of modifications is allocated to the plaintiff.  See Long v. Howard Univ., 439 F. Supp. 2d 68, 77 n.7 (D.D.C. 2006).  FORBES did not meet that burden, and summary judgment must be granted to ST. THOMAS on FORBES' claims.

### In Any Event, the Extraordinary Accommodations Sought by Forbes Were Not Reasonable

As laid out in the Special Accommodations Guidelines (Ex. ___, p. 3), and as testified to by Dean John Hernandez in his deposition (Ex. __, p. 29), any accommodations the School provides are driven by what an expert recommends, not necessarily by what the student requests.  This is only in keeping with the (Rehabilitation and Americans with Disabilities) Acts, which

create "a duty to 'gather sufficient information from the [disabled individual] **and qualified experts** as needed to determine what accommodations are necessary to enable [the individual to meet the standards in question].' " Buckingham v. United States, 998 F.2d 735, 740 (9th Cir. 1993) (quoting Mantolete v. Bolger, 767 F.2d 1416, 1423 (9th Cir. 1985)) (emphasis supplied). Cf. Stern v. Univ. of Osteopathic Med. & Health Sci., 220 F.3d 906, 908 (8th Cir. 2000) ("Mr. Stern was obliged to present **expert evidence** that the testing scheme that he requested was actually related to his disability and, furthermore, provided a benefit not available from the accommodations that the medical school did offer to him") (emphasis supplied).

Here, the School *did* provide FORBES with some accommodations. In her second semester at the School, ST. THOMAS provided provisional testing accommodations to the Plaintiff, which included time and a half and a room with limited distractions. See Exs. 5, 9, 10, 11, and 12 to Deposition of Randall Vanessa Forbes. These accommodations were provided—on a provisional basis—during the second semester, and *after* the Plaintiff informed the School that she suffered from PTSD, and requested special testing accommodations. See Plaintiff's Third Amended Complaint (DE #30) at p. 4, ¶¶16- 18, ¶22. FORBES was given time-and-a-half, which means 150 percent of the time that is otherwise allocated for an exam, in a room of limited distraction. See Deposition of John Hernandez at p. 26. "Limited distraction" meant FORBES was in room with "a couple of other students." Id.

FORBES accepted these accommodations, at the time, and only later complained that they were insufficient. Indeed, even in her petition for readmission to the School, the Plaintiff did not state that she performed poorly on her exams because she was not given the special testing accommodations that she alleges that she requested.

In her Third Amended Complaint, FORBES contended that "Plaintiff requested that the

Defendant accommodate her by giving her additional time to take tests and allow her to take her exams in a private room, alone" and explained that "[b]ecause of the Plaintiff's prior sexual attacks, she fears being in rooms with other individuals . . . " (DE #30, 5/07/08, ¶¶ 66- 69)

As pointed out in the initial Motion for Final Summary Judgment (DE #56), FORBES continually focused her complaints on ST. THOMAS' "failure" to allow her to take her law school exams alone—with no other students and with no proctor in the room.  See Forbes Deposition at Volume I, p. 113; and Forbes Deposition at Volume II, pp. 167, 169, 172, 176, 184, 185, 186, 221- 222, 236.  See also Ex. 6 to Deposition of Randall Vanessa Forbes (Apr. 17, 2007, email reciting, in part, "The proctor would be outside of the actual room.  I would really appreciate it if you would provide the same accommodations this semester.  Particularly the separate isolated location") and Plaintiff's Third Amended Complaint (DE #30, at pp. 12- 13, ¶¶66) (alleging that Defendant failed to accommodate FORBES because it did not "allow her to take her exams in a private room, alone.")

Allowing FORBES to take her exams in a room alone, in a private, isolated room, would simply not have been reasonable or feasible in this case, and the School made a reasoned determination in that regard.  Although the School does sometimes allow students to take tests in a room with no other students present—when the student has made a request for an accommodation that is properly documented, and supported by an expert's report and recommendations (so, unlike FORBES' informal request)—even in such instances, a proctor may enter the room or an administrator may enter the room to make sure that, for example, no cheating is occurring.  See Deposition of Dean John Hernandez at pp. 15- 16.  If an expert makes a specific recommendation that at student be put in a room with no other students then, generally that accommodation is provided.  See Affidavit of John Hernandez at ¶18.  However, even if a

CASE NO.:  07-22502-CIV-HOEVELER

student is allowed to take a test with no other students present, a proctor or administrator will be present in the room or will enter and leave the room at intervals.  See Affidavit of John Hernandez at ¶ 20.  But, this accommodation will not be granted in the absence of a properly-documented disability, and a recommendation from an expert for such accommodation.  See Affidavit of John Hernandez at ¶¶ 12- 17.

That being the case, allowing FORBES to take her tests in a room by herself would not have been "reasonable."  Instead, it would have presented an instance where a student with an alleged and self-diagnosed disability, with no expert documentation of same and no recommendations in relation to the disability, was given an advantage over other students.  The School must weigh the concern about any possible disadvantage to the student alleging a disability against the concern that providing that student with a favorable testing environment serves to unfairly disadvantage all other students taking the exam under the standard classroom conditions.  See Affidavit of John Hernandez at ¶ 19.  This is so because all of the classes at the Law School are graded on a curve.  See Affidavit of John Hernandez at ¶19.  Allowing one student, on the basis of an untimely request, to take an unsupervised test and thereby gain an advantage in terms of both lesser distractions and the opportunity to cheat (See Affidavit of John Hernandez at ¶¶ 19, 21), would not be reasonable.  "The obligation to make reasonable accommodation does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability."  Harnett v. Fielding Graduate Inst., 400 F. Supp. 2d 570, 576 (S.D.N.Y. 2005) (citation omitted), *disapproved of on other grounds by* Harris v. Mills, 572 F.3d 66 (2d Cir 2009).

FORBES has not met *her* burden to show that the extraordinary relief she sought—in an untimely manner—was reasonable.  Cf. Mershon v. St. Louis Univ., 442 F.3d 1069, 1077 (8th

LAW OFFICES OF
GAEBE, MULLEN, ANTONELLI & DiMATTEO
420 SOUTH DIXIE HIGHWAY • THIRD FLOOR • CORAL GABLES, FLORIDA 33146
Page 7

Cir. 2006).  Therefore, the School is entitled to a summary judgment in its favor.

### St. Thomas Made a Reasoned Judgment In Relation to Forbes' Requests for Accommodations and Readmission, Based on a Set of Rational Beliefs Concerning Its Academic Program

Of course, "[w]hen [an] accommodation involves an academic decision, courts should show great respect for the faculty's professional judgment." Amir v. St. Louis Univ., 184 F.3d 1017, 1028 (8th Cir. 1999) (quoting Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985)).  In the present case, the School made a decision that no further accommodations, beyond the provisional ones already extended to FORBES, could be made without imposing a hardship on the academic program.

One question to be answered in considering whether reasonable accommodations were provided is whether there were any available to satisfy the legitimate interests of *both* the granting institution (the School), *and* the person seeking accommodation.  See Wynne v. Tufts Univ. Sch. of Med., 932 F.2d 19, 24 (1st Cir. 1991).

When FORBES sought readmission, she *did not* state that she performed poorly on her exams because she was not given the testing accommodations that she requested.  FORBES never took issue with those accommodations, until the time her complaint was filed.  Instead, the basis of FORBES' petition for reinstatement was that she had shown academic improvement and she was "very close" to the 2.0 grade point average that it was required students maintain, pursuant to the terms and conditions of the School's Student Handbook.  See Ex. 16 to Deposition of Randall Vanessa Forbes; see also Student Handbook 2006- 2007 (attached to Affidavit of John Hernandez).  The school has a legitimate interest in both maintaining that minimum GPA standard, and in maintaining standard testing procedures insofar as is possible.

It was only after failing to meet the objective, across-the-board, minimum grade requirements for continued enrollment in law school that FORBES complained about the

sufficiency of the accommodations provided to her.  The School has been asked to defend its decisions in relation to accommodations that (a) FORBES never requested timely (b) never took issue with the implementation of during her testing schedule and (c) never allowed the School to "reconsider" in any way, since she never made the accommodations part of her petition for readmission.  The accommodations sought *after the fact* by the Plaintiff are, in the determination of the School and in the exercise of its academic judgment, simply unreasonable, and would have fundamentally altered the law school experience, to the detriment of the School *and* the student.

Testing accommodations provided by the School are consistent with the kinds of accommodations provided on the Law School Aptitude Test (LSAT), at other law schools (and other graduate-level educational institutions) and used by state bar examiners.  See Affidavit of John Hernandez at ¶16.  In making a determination as to the type of accommodations provided, the School will consider what will prepare the students for a real-world setting where, e.g., some limited distractions may occur.  See Affidavit of John Hernandez at ¶ 21.

Meanwhile, in making the determination on readmission, the Academic Standing Committee at the School will consider whether the student possess the ability to function well not only academically, at the School, but to function outside of the School environment, in the capacity for which the School is preparing the student to function, as an attorney or law school graduate.  As a paramount criteria, the Committee will consider the student's reasonable prospect for success in the course of study of the law.  See Student Handbook 2006- 2007, attached to Affidavit of John Hernandez.  In taking these matters into consideration, the Committee will be governed by standards and guidelines of the American Bar Association, and the Association of American Law Schools.  See Student Handbook 2006- 2007, attached to Affidavit of John Hernandez.

CASE NO.:  07-22502-CIV-HOEVELER
_____

The crux of the readmission decision in this case is the minimum grade point average that the school required all students to maintain:  a 2.0.  The Handbook laid out the requirement for continued admission at the School:  a grade point average of 2.0.  Even with the provisional accommodations she was granted, FORBES only earned a combined grade point average of less than 1.90.  See Plaintiff's Third Amended Complaint, DE #30, at p. 7, ¶34.

The Court asks the School to explain why the 2.0 minimum grade point average should apply in light of FORBES' request for accommodations.  Firstly, and as acknowledged by the Court, the School simply cannot re-evaluate its minimum GPA requirement each time an allegedly-disabled student seeks an exemption.  The School must and does consider the best interests of the Law School as an educational institution, including the maintaining of high standards of academic excellence and professional responsibility among members of the student body.  See Affidavit of Cecile Dykas at ¶ 11.

There are simply too many variables and inferences involved in accepting FORBES' arguments in opposition to summary judgment.  FORBES has asked the Court to imagine that she could have documented her disability—though she did not—and might have requested specific accommodations—though she did not—and thereafter could have obtained a 2.0, perhaps—though, with the accommodations she requested *at the time*, she only obtained a 1.90. The stacking of inference upon inference in this regard is not proper, even in a summary judgment proceeding where the party facing the motion might normally have all *reasonable* inferences drawn in her favor.  See Cohen v. Arvin, 878 So. 2d 403, 405 (Fla. 4th DCA 2004). FORBES has asked the Court to, in effect, require ST. THOMAS to defend against or explain the non-existence of a state of affairs that simply did not exist.  But it was FORBES' burden at all times to prove her case—she did not.

CASE NO.:  07-22502-CIV-HOEVELER
_____

The Court also references in its Order (DE #89) FORBES' statements regarding what Peter Kelly allegedly told her at the meeting between the two, and asks the School to explain how those statements do not entitle FORBES to an explanation why her request for accommodation was denied.  Firstly, Peter Kelly has entirely denied making any such statements as FORBES has alleged he made.  See Deposition of Peter Kelly at pp. 17- 18.  Secondly, the request for accommodations *was not* denied; FORBES was granted (provisional) accommodations.  It was her request for readmission that was denied, and it was denied on the basis of objective academic criteria as to what would be in ST. THOMAS'S, and FORBES', best academic interests.  See Affidavit of Cecile Dykas at ¶¶ 10, 11, 12, and 14.

Where, as here:

> the relevant officials within the institution considered alternative means, their feasibility, cost and effect on the academic program, and came to a rationally justifiable conclusion that the available alternatives would result either in lowering academic standards or requiring substantial program alteration, the court could rule as a matter of law that the institution had met its duty of seeking reasonable accommodation.

Wynne, Id., at 26.

The School came to a rationally justifiable conclusion that readmitting FORBES would have resulted in a lowering of its academic standards.  It has also concluded that allowing her the after-the-fact additional accommodation(s) she now seeks would require substantial, and detrimental, program alteration.  The School is entitled to a finding that it met its duty to FORBES, and is entitled to a grant of summary judgment in its favor.

## **CONCLUSION**

WHEREFORE the Defendant, ST. THOMAS UNIVERSITY, INC., moves this Honorable Court for the entry of an Order of Final Summary Judgment as to all claims of the

Plaintiff RANDALL VANESSA FORBES as set forth in her Third Amended Complaint, granting final judgment to the Defendant ST. THOMAS UNIVERSITY, INC., and granting all other and further relief this Honorable Court deems just and equitable.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on November 12, 2010, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record: Richard L. Brown, Esquire, BROWN & ASSOCIATES, P.A., 4445 North Highway A1A, Suite 130, Vero Beach, Florida 32963, via transmission of Notice of Electronic Filing generated by the CM/ECF system.

| | |
|---|---|
| J. PATRICK FITZGERALD, P.A. | GAEBE MULLEN ANTONELLI & DIMATTEO |
| Co-Counsel for Defendant | Attorneys for Defendant |
| 110 Merrick Way, Suite 3-B | 420 South Dixie Highway, 3rd Floor |
| Coral Gables, FL  33134 | Coral Gables, FL  33146 |
| Tel:  (305) 443-9162 | Tel:  (305) 667-0223 |
| Fax: (305) 443-6613 | Fax:  (305) 284-9844 |

By: _____/s/ Anne C. Sullivan_____
MICHAEL A. MULLEN
Florida Bar No.:  305731
mmullen@gaebemullen.com
MAXIMO A. SANTIAGO
Florida Bar No.:
msantiago@gaebemullen.com
ANNE C. SULLIVAN
Florida Bar. No.:  0888621
asullivan@gaebemullen.com