Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  07-22502 - CIV HOEVELER
MAGISTRATE JUDGE BROWN

RANDALL VANESSA FORBES,          )
                                 )
                Plaintiff,       )
                                 )
vs.                              )
                                 )
ST. THOMAS UNIVERSITY, INC.,     )
                                 )
                Defendant.       )
------------------------------X

155 South Miami Avenue
Suite 210
Miami, Florida
Friday, February 27, 2009
9:30 a.m.

DEPOSITION

OF

PETER T. KELLY

Forbes vs. St. Thomas                                                February 27, 2009

Page 2

```
 1   APPEARANCES:

 2

         On behalf of the Plaintiff:
 3           PHILLIPS LANIER
             One Biscayne Tower
 4           2 South Biscayne Boulevard
             PH #3800
 5           Miami, Florida  33131
             (305) 350-5299
 6           By:  EMILY PHILLIPS, ESQ.

 7

         On behalf of the Defendant:
 8           GAEBE, MULLEN, ANTONELLI, ESCO & DIMATTEO
             420 South Dixie Highway
 9           Third Floor
             Coral Gables, Florida  33146
10           (305) 667-0223
             By:  MAXIMO A. SANTIAGO, ESQ.

11

12       On behalf of the Defendant:
             J. PATRICK FITZGERALD, P.A.
13           110 Merrick Way
             Suite 3-B
14           Coral Gables, Florida  33134
             (305) 443-9162
15           By:  ROBERTO J. DIAZ, ESQ.

16

     ALSO PRESENT:
17
                 Randall Vanessa Forbes
18

19

20

21

22

23

24

25
```

Forbes vs. St. Thomas                                        February 27, 2009

Page 3

1                        I N D E X

2    WITNESS                                    PAGE

3    PETER T. KELLY

4    Direct examination by Ms. Phillips         4

5

6                    E-X-H-I-B-I-T-S

7

     Plaintiff's Exhibit No. 1                  12
8    (Offense-Incident Report, 6/12/07)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Forbes vs. St. Thomas                                    February 27, 2009

Page 4

1    THEREUPON:

2                        PETER T. KELLY,

3    having been duly sworn, was examined and testified as

4    follows:

5                      DIRECT EXAMINATION

6    BY MS. PHILLIPS:

7         Q    Good morning.  My name is Emily Phillips and I

8    represent Randall Forbes.  We're here today in the lawsuit

9    that she filed against St. Thomas University, as you're

10   aware.

11             Mr. Kelly, have you ever had your deposition

12   taken before?

13        A    I have not.

14        Q    Okay.  There are just a couple of rules, you

15   know, just to go over, since this is your first time.

16   First of all, all answers need to be verbal.  Please don't

17   shake your head and give me hand motions.  Although I may

18   understand them, the court reporter can only take down

19   your words.  Also, please ask -- wait and answer the

20   question after I've asked it.  Sometimes, you know, people

21   tend to get a little excited and they just go ahead and

22   blurt out answers.  But once again, it's very confusing

23   for the court reporter to take down two people at the same

24   time.  If there is a question I ask you that you don't

25   understand, just simply ask me to rephrase it and I'll be

Forbes vs. St. Thomas                                                    February 27, 2009

Page 5

 1    happy to do so.

 2              As you know, you're under oath today and all

 3    your answers must be truthful.  Do you understand?

 4        A    Yes.

 5        Q    Please state your full name for the record.

 6        A    Peter T. Kelly.

 7        Q    And what is your current address?

 8        A    My home address?

 9        Q    Business is fine.

10        A    16401 Northwest 37th Avenue, Miami Gardens,

11    33054.

12        Q    Are you currently employed?

13        A    Yes, at St. Thomas.

14        Q    What is your position at St. Thomas?

15        A    Director of student services at the law school.

16        Q    How long have you held that position?

17        A    Since May 2006.

18        Q    What was your position prior to May 2006?

19        A    I worked at a small law firm in Boston.

20        Q    How long did you work there?

21        A    About six months.

22        Q    Okay.  And what is your educational background,

23    Mr. Kelly?

24        A    I went to college in New York and received a JD

25    at Catholic University in Washington, D.C.

Forbes vs. St. Thomas                                    February 27, 2009

Page 6

1     Q    Okay.  Your job currently at St. Thomas

2  University, what are your responsibilities at that

3  position?

4     A    As director of student services, I work with the

5  students and faculty on a number of different projects.  I

6  am responsible for overseeing and managing the travel for

7  all the student organizations that travel to competitions,

8  boot court, mock trial.  I work on all special events at

9  the law school, including orientation and graduation, and

10  distinguished speaker series that we have throughout the

11  academic year.  I work with faculty on various conferences

12  that they may host.  And also assist the assistant dean

13  with whatever projects may arise.

14     Q    Okay.  Are you acquainted with the plaintiff in

15  this case, Randall Forbes?

16     A    I am, yes.

17     Q    How many times have you met her?

18     A    I believe the first time I met Ms. Forbes was in

19  June of 2007.

20     Q    Okay.  Do you remember why you met with her at

21  that time?

22     A    Yes.  I knew that Ms. Forbes had been

23  academically dismissed and I knew that she had some

24  difficulties with that news, which isn't surprising, and I

25  was willing to meet with her in early June of 2007.

Forbes vs. St. Thomas                                          February 27, 2009

1        Q     As part of your responsibilities at St. Thomas,

2   is it common for you to know when students have been

3   placed on academic probation or if there's a possibility

4   that they'll be dismissed?

5        A     I'm -- I don't have as much interaction with

6   students who are put on probation.  But I was made aware

7   of everyone who was academically dismissed in June 2007

8   only because the assistant dean, John Hernandez, had gone

9   to Spain, and the associate dean, Cece Dykas, felt it

10  necessary for someone to be a contact person for not only

11  students, but parents.  And since the Assistant Dean

12  Hernandez was out of the country, my name is given.  So I

13  interacted with a number of different students and parents

14  of students who were academically dismissed in June 2007.

15       Q     So as a general rule, that's not really part of

16  your job responsibilities?

17            MR. SANTIAGO:  Object to the form of the

18       question.

19            Go ahead, you can answer.

20  BY MS. PHILLIPS:

21       Q     He's going to object from time to time, but you

22  can go ahead and answer the question.

23       A     Sure.  As a general rule, that's correct.

24       Q     Okay.  When you first met with Ms. Forbes, I

25  believe you said in June of 2007, did she contact you to

Forbes vs. St. Thomas                                                      February 27, 2009

Page 8

1    schedule that meeting?

2         A    That's correct.

3         Q    Okay.  And do you remember what you discussed

4    during that meeting with Ms. Forbes?

5         A    Yes.  She had e-mailed me and I said I would be

6    glad to meet with her.  I think it was an afternoon, on a

7    Tuesday possibly.  And then she called me on my phone

8    extension in my office and she said she wanted to meet

9    with me immediately.  So I was willing to do that.  I went

10   up to one of the smaller classrooms on the second floor

11   and met with Ms. Forbes for about an hour.

12        Q    Okay.  Was it only you and Ms. Forbes in the

13   room at that time during the meeting?

14        A    That's correct.

15        Q    Okay.  And what did you discuss exactly with

16   Ms. Forbes?

17        A    Well, Ms. Forbes had stated to me that she was

18   having great difficulty with the news that she had been

19   academically dismissed.  She had expressed to me that she

20   was, you know, going to hurt herself.  And, you know, I

21   specifically recall her saying that, you know, "It's over

22   for me."  And I was concerned about her welfare.  But we

23   talked about a number of things in the hour.  I remember a

24   particular drink I was drinking.  We talked about, I

25   believe Ms. Forbes had studied Latin.  We talked about

Forbes vs. St. Thomas                                                      February 27, 2009

Page 9

1   that as well.  So it wasn't necessarily all to do with her

2   being academically dismissed.  I wanted to be as

3   comfortable with her in that hour that I could be.

4        Q    Okay.  Did you meet with other students during

5   that time who had been academically dismissed?

6        A    Yes.  They were more brief, though, those

7   meetings.  It might have been one or two students.  I know

8   I did speak on the phone, which was more common.  I spoke

9   with a couple students on the phone and probably a parent

10  as or two as well.

11       Q    Okay.  Are you familiar with -- what's the name

12  of the committee that meets to decide whether or not

13  someone will be academically dismissed, are you aware?

14       A    The name exactly, I couldn't tell you off the

15  top of my head.  It's --

16       Q    Academic Probation Committee, is that it?

17       A    Something to that effect, but I'm not sure.

18       Q    Okay.  Are you aware like whether or not the

19  standards they use?  And I'm not sure you are.  I'm not

20  sure that's part of your job description.

21       A    No.  No, I'm not.

22            MR. SANTIAGO:  Let her ask the question.

23  BY MS. PHILLIPS:

24       Q    Let me finish.  Are you aware of the standards

25  that they use and whether or not they're used uniformly or

Forbes vs. St. Thomas

February 27, 2009

Page 10

1  whether or not it's discretionary?  I know that there's a

2  minimum GPA requirement.  But other than that, do you

3  know --

4        A    No.

5        Q    You're not aware.

6             Okay.  During the June 2007 meeting with

7  Ms. Forbes, what was Ms. Forbes' demeanor like during the

8  meeting?

9        A    I would describe her demeanor as very troubled.

10  She didn't seem well.

11        Q    Did she raise her voice?

12        A    No.

13        Q    Did she use any profanity?

14        A    No.

15        Q    Did she ever threaten to harm you personally?

16        A    No, but she expressed to me that she was going

17  to harm herself, which --

18        Q    Did she -- I'm sorry.  Did she specifically

19  threaten to commit suicide?

20        A    I don't know if she used the exact words, but

21  she said she was going to end her life.

22        Q    Okay.  Did you discuss that morning with her

23  that she had attended her evidence class despite the fact

24  that she had been dismissed?  Do you remember that?

25        A    Yes, I do recall that.

Forbes vs. St. Thomas                                          February 27, 2009

Page 11

1      Q     Okay.  And did she advise you of that or did

2   someone else inform you that she had attended a class?

3      A     I believe Ms. Forbes told me that she was

4   attending her classes up until that point.

5      Q     Were you aware back in June of 2007 of any

6   disciplinary problems Ms. Forbes had had at the law

7   school?

8      A     No.

9      Q     Okay.  Were you aware that sometime during June

10  of 2007 that the police were called on Ms. Forbes at the

11  law school?

12     A     Yes.

13     Q     Why were the police called?

14     A     The first time I was not on campus.  I was told

15  that a student was in the chapel on campus and had

16  threatened to take her own life.  Under the circumstances,

17  as I was told, that someone had called the campus and said

18  that, "My girlfriend was threatening to take her life,"

19  you know, "Please make sure that the police come onto

20  campus."  So that was the first time.

21     Q     Were you actually at the law school when the

22  police came?

23     A     No.  I was off campus.

24     Q     Okay.  Were you aware of any other time that the

25  police had been called on Ms. Forbes?

Forbes vs. St. Thomas                                                    February 27, 2009

Page 12

1        A     Yes, I myself called the police and I informed

2   Ms. Forbes at the end of our hour-long discussion in the

3   small classroom on the second floor of the law school that

4   I was going to call the police.

5        Q     And you did call the police that day?

6        A     Yes.

7        Q     And what was your reasoning for calling the

8   police that day?

9        A     Because she had -- Ms. Forbes had expressed to

10  me that she was going to do harm to herself.

11       Q     Okay.

12       A     And I also knew that the police had already come

13  a previous time.

14       Q     Okay.  Was the date -- was that date June 12,

15  2007?

16       A     Yes.

17       Q     Okay.

18       A     If that's a Tuesday, that's correct.

19            MS. PHILLIPS:  I'd like to mark this as

20       Plaintiff's Exhibit 1.

21            (Plaintiff's Exhibit No. 1 was marked for

22  Identification.)

23  BY MS. PHILLIPS:

24       Q     Mr. Kelly, have you seen that police report

25  before?

Forbes vs. St. Thomas                                                    February 27, 2009

Page 13

1        A    I have not.

2        Q    Okay.  That is a police report from when you

3   called the police on that date.  And during your meeting

4   with Ms. Forbes that day when you advised her that you

5   were going to call the police, did her demeanor change

6   after that time or was it the same throughout the entire

7   meeting?

8        A    I specifically remember telling her that I was

9   going to call the police.  And she affirmed what I had

10  said.  She said, "You're gonna call the police, aren't

11  you?"

12       Q    But did her demeanor change?

13       A    No.

14       Q    Can I see that again, please?

15            (Witness complies.)

16  BY MS. PHILLIPS:

17       Q    Mr. Kelly, if you could just read down here the

18  narrative portion, the first couple sentences of that

19  police report for me, please.

20            MR. SANTIAGO:  Well, if you want to read it, you

21       can go ahead and read it.

22            MS. PHILLIPS:  That's fine.

23            MR. SANTIAGO:  Just read it.  Because he's never

24       read that before.

25            MS. PHILLIPS:  "C01" on this, I believe, is

Page 14

```
 1        probably Mr. Kelly.  "C01 advised that Z01 was

 2        expelled from school and became very depressed.  As a

 3        result, she said she would kill herself and take

 4        people with her."

 5   BY MS. PHILLIPS:

 6        Q    Mr. Kelly, earlier you said that Ms. Forbes only

 7   threatened her life.  This police report reflects that she

 8   would be taking other people with her.  Is that accurate?

 9             MR. SANTIAGO:  Object to the form of the

10        question.

11             You can go ahead and answer if you

12        understand.

13        A    It is accurate.  It's been awhile, so I don't

14   remember exactly what she said.  But I do know that she

15   said she would take her own life.

16        Q    Did she also say she would take people with her?

17        A    I believe that she did, yes.

18        Q    Okay.  But that's not what you stated earlier

19   when I asked; is that correct?

20        A    That's correct.

21        Q    Okay.  The day that the police were at the

22   university, do you remember how long the police were there

23   meeting with you and Ms. Forbes, approximately how long?

24        A    You mean when they came after I called?

25        Q    Yes.
```

Page 15

```
 1        A     The only interaction I had with the police was I
 2   told them -- well, after I left the room, I had a
 3   professor go into the room with Ms. Forbes, because I
 4   didn't feel that it was safe to leave her alone.
 5        Q     Okay.
 6        A     I called the police.  The police arrived shortly
 7   thereafter.  I explained to the police where the room was.
 8   And that was the last interaction I had with the police.
 9        Q     What was the name of that professor?
10        A     She's an assistant dean.  Her name is Barbara
11   Singer.
12        Q     Do you remember approximately how long
13   Ms. Singer was with you and Ms. Forbes?
14        A     She was not with me.  She was with Ms. Forbes.
15        Q     Only Ms. Forbes?
16        A     That's correct.
17        Q     Do you remember for approximately how long?
18        A     I don't know.  Only the time that the, you know,
19   until the police arrived.
20        Q     Did you also at some point go speak to Dean
21   Alfredo Garcia about this incident?
22        A     Yes.
23        Q     Okay.  And what was your discussion with him?
24        A     Excuse me?
25        Q     What was your discussion with Mr. Garcia?
```

Page 16

 1      A    I told him that Ms. Forbes had told me that she

 2   was going to take her own life and that I was going to

 3   call the police.

 4      Q    Okay.  Do you remember how many police officers

 5   arrived that day?

 6      A    I don't recall.

 7      Q    Do you have any personal involvement with your

 8   job responsibilities dealing with students who request

 9   special accommodations?

10      A    I do not.

11      Q    Is that the dean's responsibility or is that

12   someone else's responsibility at the university?

13      A    It's not the dean of the law school's

14   responsibility.  It's the assistant dean's.

15      Q    Who is the current assistant dean; what's the

16   name?

17      A    John Hernandez.

18      Q    He wasn't the assistant dean at the time during

19   2006-2007, was he?

20      A    Yes, he was.

21      Q    And now what is his title?

22      A    He's still the assistant dean for student

23   affairs.

24      Q    For some reason I thought he had another

25   position.  Okay.

Forbes vs. St. Thomas                                                February 27, 2009

Page 17

1           MS. PHILLIPS:   Let me take just a break just a

2     minute.

3           (There was a brief recess.)

4  BY MS. PHILLIPS:

5     Q    Mr. Kelly, did you ever tell Ms. Forbes during

6  your meeting with her on or around June 2007 that the

7  reason she was dismissed was because she was raped?

8     A    No.

9     Q    You never used those words?

10     A    No.

11     Q    Did you ever tell her the reason she was

12  dismissed was because of her disability?

13     A    No.

14     Q    Were you ever privy to any conversations or

15  information at the university about why she was dismissed

16  other than not meeting the minimum GPA requirement?

17     A    I know that she was dismissed for academic

18  reasons.

19     Q    Okay.

20     A    That's all.

21     Q    You don't have any reason to believe it was

22  dealing -- it was because the university -- strike that.

23           You don't have any reason to believe that it had

24  anything to do with her being raped or her disability; is

25  that correct?

Forbes vs. St. Thomas                                    February 27, 2009

Page 18

1           A     I have no reason to believe that.

2           Q     Okay.  Did you ever tell Ms. Forbes during the

3     meeting that day that you didn't think she would be able

4     to handle the course work because there would be classes

5     that may discuss rape or similar crimes?

6           A     No.

7           Q     No?

8           A     I don't recall that.

9               MS. PHILLIPS:  Okay.  No further questions.

10              I'm going to continue this deposition, in

11          the event that something happens in the future

12          and I want to come back.  But I don't have any

13          further questions at this time.

14              MR. SANTIAGO:  What do you mean, "in the event

15          that something happens"?

16              MS. PHILLIPS:  Well, I'm just saying if

17          something happens in the discovery process.  I'm not

18          going to finish the deposition, you know, for today.

19          But if we have to come back --

20              MR. SANTIAGO:  Well, I just want it noted on the

21          record I'm going to object to any other depositions

22          in the future.  And, you know, we had an opportunity

23          to move this deposition at a point after discovery.

24          It was your decision to take his deposition at this

25          point.  So any other depositions in the future I'm

Forbes vs. St. Thomas                                        February 27, 2009

Page 19

1          going to object to.

2               MS. PHILLIPS:  That's fine.  If we have to go to

3          a hearing, if it's necessary, we'll go.

4               MR. SANTIAGO:  No questions.

5               We're going to read.

6               (Thereupon, the deposition concluded at

7          10:00 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 20

CERTIFICATE OF OATH

STATE OF FLORIDA      )

COUNTY OF MIAMI-DADE)


        I, the undersigned authority, certify that

PETER T. KELLY personally appeared before me and was duly

sworn.

        WITNESS my hand and official seal this 20th day

of October, 2010.




                    _____

                    LILLIAN GADOMSKI, RPR
                    Notary Public - State of Florida
                    My Commission No. DD621488
                    Expires:  January 4, 2011

Forbes vs. St. Thomas                                          February 27, 2009

Page 21

1                        CERTIFICATE

2

3   STATE OF FLORIDA      )

4                         )  SS:

5   COUNTY OF MIAMI-DADE)

6

7            I, LILLIAN GADOMSKI, Registered Professional

8   Reporter and Notary Public, certify that I was authorized

9   to and did stenographically report the deposition of

10  PETER T. KELLY; that a review of the transcript was

11  requested; and that the transcript is a true and complete

12  record of my stenographic notes.

13            I further certify that I am not a relative,

14  employee, attorney, or counsel of any of the parties, nor

15  am I a relative or employee of any of the parties'

16  attorney or counsel connected with the action, nor am I

17  financially interested in the action.

18            Dated this 20th day of October, 2010.

19

20

21                         _____

22                         LILLIAN GADOMSKI, RPR
                            and Notary Public
23

24

25

ERRATA SHEET

IN RE:  RANDALL VANESSA FORBES vs. ST. THOMAS UNIVERSITY, INC.

CASE NO.:  07-22502 - CIV HOEVELER

DEPOSITION OF:  PETER T. KELLY

DATE TAKEN:  FEBRUARY 27, 2009

PAGE NO.        LINE NO.                    CORRECTION OR CHANGES

_____        _____            _____

_____        _____            _____

_____        _____            _____

_____        _____            _____

_____        _____            _____

_____        _____            _____

_____        _____            _____

_____        _____            _____

                                    _____


        Sworn to and subscribed before me this

_____ day of _____, 2010, by PETER T. KELLY

who produced _____ as Identification.



                        ------------------------------------
                        Notary Public - State of Florida
                        My Commission No.
                        Expires:

TAYLOR, JONOVIC, WHITE, GENDRON & KIRCHER-ECHARTE
FLORIDA REALTIME REPORTING
110 EAST BROWARD BOULEVARD
SUITE 1850
FORT LAUDERDALE, FLORIDA  33301
(954) 759-4560

October 20, 2010
Gaebe, Mullen, Antonelli, Esco & Dimatteo
Attn:  Peter T. Kelly
c/o Maximo A. Santiago, Esquire
420 South Dixie Highway
Third Floor
Coral Gables, Florida  33146

Dear Mr. Kelly:

With reference to the deposition taken on February 27, 2009, please be advised that the transcript of the deposition has been completed and is awaiting signature.

Please arrange to stop by our office for the purpose of reading and signing the deposition.  Our office hours are 9:00 a.m. to 5:00 p.m., Monday through Friday.  You may, however, read a copy of the transcript provided by any of the attorneys connected with the case, denoting any corrections by page and line number on a separate sheet of paper.  This correction page must be signed by you and returned to us for filing with the original.

If this has not been taken care of, however, within the next 30 days, or by the time of trial, whichever comes first, I shall then conclude that the reading, subscribing and notice of filing have been waived.

The original of this deposition has been forwarded to the ordering party, and your errata sheet, once received, will be forwarded to all counsel of record.

Sincerely,


Lillian Gadomski