FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2010 FEB 10 A 10: 20

JUDITH MEISENHELDER,

    Plaintiff,

vs.                                    Case No.: 3:09-cv-0074-HES-TEM

FLORIDA COASTAL SCHOOL
OF LAW, INC.

    Defendant.
_____/

## ORDER

Before the Court is Defendant Florida Coastal School of Law's ("FCSL") Motion for Summary Judgment (Doc. 41, filed November 25, 2009), Plaintiff's Response in Opposition (Doc. 47, filed December 8, 2009), Plaintiff's Supplemental Authority (Doc. 57, filed February 6, 2010), and Defendant's Response (Doc. 58, filed February 9, 2010). Plaintiff initially filed her claim in Circuit Court in Duval County, Florida; Defendant timely removed this action to the United States District Court, Middle District of Florida. In her suit, Plaintiff claims that Defendant failed to make reasonable accommodations for her in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, et. seq., and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. §§ 701, et. seq. The Court heard oral argument on this Motion on January 27, 2010. The Court has considered the issues before it and determined the following.

1

## I. Statement of Facts

In fall of 2004, Judith Meisenhelder ("Plaintiff") began her first year of law school at FCSL in Jacksonville, Florida. At the time of her enrollment, Plaintiff had a long history of migraine headaches and suffered from depression. When she started law school, Plaintiff was taking Imetrix injections to treat her migraines. Plaintiff notified the law school that she suffered from migraines and an eating disorder; however, Plaintiff did not officially seek an accommodation under the ADA for her condition at that time. She did alert the Associate Dean of Academic Affairs, Emily Hurst Martin ("Martin"), that she might need to exceed the permitted absences due to her condition.[1] Martin told her that they would handle the problem if and when the time arose.

In 2007, Rosa DuBose ("DuBose") took over for Martin as the Associate Dean of Academic Affairs. In her role as Associate Dean, "DuBose was not responsible for identifying or evaluating students with potential disabilities pursuant to the ADA." (Df's Motion for Summary Judgment, Doc. 41. at p. 4). It is FCSL's position that had Plaintiff identified herself as a student with a long-term 'disability' pursuant to the ADA, she would have been referred to the Dean of Student Affairs, whose job it is to make sure that FCSL is in compliance with ADA standards. Prior to January 2008, the Dean of Student Affairs was Donald Jones. In January 2008, this role was assumed by Tom Taggart. Finally, Terri Dalvantes ("Dalvantes") acted as FCSL's Vice Dean and was the

---

[1] When Plaintiff began her first semester at FCSL, the 2004 Student Handbook ("Handbook") was in effect. The Handbook promulgated various policies for students attending FCSL, including the attendance policy. In 2007, the Handbook was revised and remained in effect for the remainder of the time that Plaintiff was enrolled at FCSL. The Handbook prohibits a student from missing more than twenty percent of the total number of classes in a course. If a student exceeds the permitted number of absences, the student is prohibited from sitting for the exam and receives an "F" in the course. FCSL maintains that this policy was created in accordance with ABA standards.

2

supervisor to the Associate Dean of Academic Affairs and the Dean of Student Affairs. According to Dalvantes, when a student informs FCSL that they have a disability, FCSL's goal is to assist the student in identifying and executing a reasonable accommodation, as required by the ADA, without FCSL having to fundamentally alter its academic program.

After Plaintiff's first semester in law school, her grade point average ("G.P.A.") fell below 2.0 and she was placed on academic probation. During her second semester, however, Plaintiff's G.P.A. rose above a 2.0 and remained there until the semester before she was academically dismissed in 2008. Yet, Plaintiff struggled throughout her tenure at FCSL. In 2005, Plaintiff dropped her Lawyering Processes II writing course because of a conflict with the professor. In the spring of 2006, Plaintiff withdrew from all five of her classes, though she did not take an official leave of absence; she also withdrew from Property II, Remedies, and Arbitration courses later that fall. In the spring of 2007, Plaintiff took a one semester leave of absence. She returned to school that summer and in the fall of 2007, she withdrew from Administrative Law and Family Law. By the summer of 2008, her G.P.A. was again below 2.0 and she was dismissed from FCSL in August of 2008, after having attended FCSL as a full-time student for the better part of four years. She petitioned her dismissal; it was denied and Plaintiff filed suit.

The following is a brief overview of the events leading up to Plaintiff's dismissal from FCSL. In the summer of 2007, Plaintiff alerted DuBose that she had been having medical issues and requested a waiver of the attendance policy as a result. In addition to exceeding the permitted number of absences in a class, Plaintiff also requested that she be permitted to take the finals in the classes where she exceeded the absence policy and that all of her classes be digitally recorded so that if she was unable to attend those classes, she could view them at a later time. As a result of the

3

requested accommodations, FCSL required that Plaintiff submit medical paperwork supporting her requests to seek accommodations. Plaintiff submitted various notes from her treating physicians, but was told by FCSL that they were insufficient to seek an accommodation.[2]

Notwithstanding the insufficient paperwork, DuBose did accommodate Plaintiff. She permitted Plaintiff to exceed the absence policy; however, Plaintiff was not granted, nor does it appear that she requested, unlimited absences. DuBose also allowed Plaintiff to take final exams in the classes where she exceeded the permitted number of absences. Further, the record indicates that Plaintiff was late numerous times in producing documentation to substantiate her absences. Yet, FCSL appears to have permitted her to exceed the absence policy in every class where it was requested.

Additionally, FCSL permitted Plaintiff to make-up missed exams. On December 7, 2007, Plaintiff had a Professional Responsibility exam scheduled for that morning beginning at 9:00 am. Plaintiff requested a deferral and was granted one until December 10, 2007, at 9:30. Further, on May 8, 2008, Plaintiff had an Elder Law exam scheduled for 9:00 that morning. DuBose agreed to move the exam to the following day, so long as Plaintiff provided official medical documentation of the symptoms that occurred during the scheduled exam time. Again, on May 15, 2008, Plaintiff submitted a late request for a deferral, which DuBose accepted, and rescheduled her exam for May 20, 2008, at 10:00 a.m. On July 23, 2008, Plaintiff emailed DuBose to tell her that she wouldn't be able to take her Juvenile Law exam scheduled for that evening at 6:00 p.m. DuBose rescheduled

---

[2] It is important to note that Plaintiff did file some medical documentation from her pain management specialist Dr. Woeste, her neurologist Dr. Bearstein, and her mental health specialists Drs. Nevers and Pathek. When asked why she didn't provide more substantial documentation, Plaintiff responded, "I tried. The best that I could. Some of the documentation doesn't exist. So I did the best that I could." (Pl's Depo., at p. 34).

4

the Juvenile Law for July 28, 2008. Further, Plaintiff missed her Real Estate Transactions exam scheduled for July 25, 2008. DuBose again granted the deferral and re-scheduled the Real Estate Transactions exam for July 28, 2008. It was during that summer semester that Plaintiff's G.P.A. fell below 2.0 and she was academically dismissed from the school.

## II. Analysis

### a. Summary Judgment Standard

Summary judgment is appropriate when there are no disputable issues of material fact and the moving party is entitled to judgment as a matter of law. *Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998). Rule 56 (c) of the Fed. R. Civ. P. dictates an entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Midrash v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir. 2004). Further, "there can be no genuine issue as to any material fact since a [ ] failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986)(internal quotation marks omitted). For the reasons cited below, Defendant's motion for summary judgment is granted.

### b. Plaintiff's claims under the ADA

To state a valid cause of action under both the ADA and Section 504,[3] a plaintiff must show that she: 1. is disabled; 2. is a qualified individual; and 3. was subjected to unlawful discrimination

---

[3] Claims of discrimination pursuant to the ADA and/or Section 504 are subject to similar legal analysis. *Wilborne v. Forsyth County Sch. Dist.*, 306 F. App'x. 473, 476 (11th Cir. 2009).

because of the disability. *Holly v. Clairson Industries, L.L.C.,* 492 F.3d 1247, 1256 (11th Cir. 2007).[4] The issue before this court is whether Plaintiff was disabled and, if so, whether FCSL reasonably accommodated her disability.

A "qualified individual with a disability" is one who is defined as, "an individual who, with our without reasonable accommodation, can perform the essential functions or meet the essential requirements of the program in which such individual participates or in which such individual desires to participate." *Ellis v. Morehouse Sch. of Medicine,* 925 F. Supp. 1529, 1540 (N.D. Ga. 1996). Thus, to meet the requirements set forth, Plaintiff must show that she has a statutorily recognized disability and that she, "can meet [the] essential requirements required to remain a student in good standing . . . despite [her] disability, or, can meet the essential functions as a . . . student with a reasonable accommodation for [her] disability." *Id.*

Additionally, an individual has a 'disability' for the purpose of each title of the ADA if such individual has, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). A Plaintiff attempting to prove a disability must show not only that she suffers from a disability under the ADA, but also that she suffers from an impairment that restricts her ability to participate in an important life activity.

### i. Plaintiff was not disabled under the ADA

Not all impairments automatically qualify individuals for protection under the ADA. In order

---

[4]All of the conduct alleged in Plaintiff's Complaint occurred prior to the effective date of the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008), which became effective on January 1, 2009. Plaintiff has not asserted that the Act should be applied retroactively, and this Court, therefore, does not address the possible retroactivity of the ADAAA.

6

to be successful for a claim under the ADA, a plaintiff must show that her disability is one that is recognized under the statute and that the impairment restricts "important life activities . . . in comparison to most people." *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 627 (6th Cir. 2000). The Plaintiff has alleged many 'disabilities', but has consistently maintained, and submitted supporting documentation, that she suffered from migraine headaches, depression, and an eating disorder. Under the law of the Eleventh Circuit, "[v]ague or conclusory statements revealing an unspecified incapacity are insufficient to put [a defendant] on notice of its obligations under the ADA." *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996). Further, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Greenberg v. Bell South Telecomms., Inc.*, 498 F.3d 1258, 1264 (11th Cir. 2007).

It is not disputed that Plaintiff suffers from a number of medical conditions that could be regarded individually as impairments. The question is whether these impairments substantially limited one or more of Plaintiff's major life activities. Major life activities means, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)(quoting 29 C.F.R. § 1630.2(i)). Though Plaintiff's conditions may inhibit her ability to attend class and take exams on time, the Supreme Court has made it clear that "the determination whether an individual is disabled [for ADA purposes] is to be made with reference to measures that mitigate the individuals' impairment . . . ." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475 (1999). The Plaintiff administers Imitrex injections to herself for her migraines. (Letter from Dr. Woeste dated November 16, 2007, Ex. 5). Additionally, Plaintiff takes or has taken a variety of medications, including

7

Adderall, Lexapro, Ambien, and Valium. (Letter from Dr. Pathak dated October 22, 2007, Ex. 12d). Further, in December 2007, her pain specialist Dr. Woeste submitted a letter to the school stating, "[t]he patient suffers from a problem that we have increasingly been able to manage and I think we are going on the right track. . . . We anticipate [ ] improvement." (Letter from Dr. Woeste dated October 18, 2007, Ex. 12b).

Plaintiff was taking a variety of medications to help manage her impairments. As a result, her condition was improving by the fall of 2007, as noted by her doctor. Moreover, during the next two semesters, spring and summer 2008, Plaintiff did not have any issues with class attendance. Plaintiff was only dismissed from the school during summer 2008, after her G.P.A. again fell below the required 2.0. Until that point, and even during the height of her difficulties, Plaintiff managed to keep her G.P.A. within the required range. As Plaintiff has failed to establish that she suffered from a disability as defined by the ADA or Section 504, her case cannot go forward.

### ii. Even if Plaintiff was found to be disabled under the ADA, Defendant "reasonably" accommodated her

Even if Plaintiff was able to prove that she suffered from a disability as required by the ADA, Defendant reasonably accommodated her. "In general . . . it is the responsibility of the individual with the disability to inform the [school] that an accommodation is needed." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)(internal quotation marks omitted). "Where the disability, resulting limitations, and necessary reasonable accommodations [ ] are not open, obvious, and apparent, the initial burden rests primarily on the [individual] to specifically identify the disability . . . and to suggest the reasonable accommodations." *Id*.

Once an accommodation is requested through the proper channels, "[t]he appropriate

8

reasonable accommodation is best determined though a flexible, interactive process that involves both the [school] and the qualified individual with a disability." *Id.* Importantly, the law does not require that FCSL grant every accommodation requested by an individual; rather FCSL need only provide accommodations that are reasonable.[5] *See Se. Cmty. Coll. v. Davis*, 442 U.S. 297, 413 (1979)(holding that the ADA does not require the perfect elimination of all disadvantages that may flow from the disability, nor does it require lowering standards); *see also Carter v. Bennett*, 840 F.2d 63, 67 (D.C.Cir. 1988)(finding that the ADA does not require an employer to "provide the plaintiff with every accommodation [the disabled individual] may request," so long as the accommodation provided is reasonable)(internal quotation marks omitted).

FCSL reasonably accommodated Plaintiff as required by the ADA. FCSL policy dictates that if a student misses more than 20 percent of the classes in a given course, the student receives a failing grade ("F") in the class. However, each time that Plaintiff exceed the attendance policy, FCSL either permitted Plaintiff to sit for the exam (thereby removing her from the attendance policy in it is entirety) or withdraw from the class without being academically penalized. Moreover, each time Plaintiff requested that an exam be moved or rescheduled, FCSL consented. The only time that FCSL took issue with an exam time being altered was in May 2008, when Plaintiff requested additional time to take an exam once the exam had already begun.

---

[5]Plaintiff alleges that her performance declined once DuBose took over as Assistant Dean; "[t]he evidence . . . shows that Emily Hurst Martin, DuBose's predecessor, worked with [Plaintiff] during her first two and a half years at FCSL. . . . Further, the evidence shows that DuBose repeatedly took actions that not only denied [Plaintiff] an accommodation, but made [Plaintiff's] situation even worse." (Pl's Resp., Doc. 47, at 2). Plaintiff mistakenly presumes that if DuBose accommodated her differently than Martin, than that accommodation was not "reasonable" under the ADA. Notwithstanding this improper leap in logic, Plaintiff fails to note a time that DuBose did not allow her to 1) exceed the absence policy without failing a class or 2) reschedule a missed exam, provided Plaintiff produced proper documentation.

9

Plaintiff also argues that her request to have her classes digitally recorded was reasonable and in line with the standards set forth by the American Bar Association ("ABA"). However, FCSL is not required to adopt an accommodation that would fundamentally alter its educational program. Though the ABA permits some forms of distance learning, Defendant properly notes that Section 306 of the ABA standards for Approval of Law Students gives credit for distance education if, "the method of course delivery, and the method of evaluating student performance are approved as part of the school's *regular* curriculum process." (emphasis added). Distance learning was not a regular part of FCSL's curriculum, nor was it required to be upon Plaintiff's request. Further, once Plaintiff made the request to have her classes digitally recorded, she did not have difficulties with attendance. Plaintiff first requested that all of her classes be digitally recorded in the fall of 2007. (*See* October 27, 2007 letter to Dean Jones, Ex.2). During the next two semesters, spring and summer of 2008, Plaintiff attended her classes regularly and digital recording was not necessary. It was only after the summer of 2008 that Plaintiff was academically dismissed from the school because her G.P.A. dropped below the required average.

Finally, FCSL's Academic and Dismissal Policy reads, in pertinent part, "[e]ach student's academic record will be reviewed at the conclusion of each semester of enrollment. If, after a student has completed the twenty-four credit hours, she has a cumulative grade point average below 2.00 for all work completed, she will be academically dismissed from FCSL." (*See* Student Handbook). Additionally, the Supreme Court has determined that "[u]niversity faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Regents Univ. of Michigan v. Ewing*, 474 U.S. 214, 225, n.11 (1985)(*quoting Board of Curators Univ. of Mo. v. Horowitz*, 435 U.S. 78, 98, n.6

10

(1978)(Powell, J., concurring). Despite repeated excusal from the attendance policy and being permitted to reschedule every missed exam, Plaintiff was unable to maintain a 2.0 G.P.A. Accordingly, the faculty Academic Standards Committee academically dismissed Plaintiff and denied her application for re-enrollment.

Therefore it is **ORDERED** and **ADJUDGED**:

1. Defendant's Motion for Summary Judgment is **GRANTED**.

2. The Clerk is directed to enter judgment on all counts in favor of Florida Coastal School of Law, terminate all pending motions, and **CLOSE** the file.

**DONE AND ORDERED** at Jacksonville, Florida this /8¢/ day of February, 2010.

HARVEY E. SCHLESINGER
United States District Judge

Copies to:

Mike E. Jorgensen, Esq.
Jay Meisenhelder, Esq.
Kelly L. DeGance, Esq.
Mark G. Alexander, Esq.

11