UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 07-22502-Civ-HOEVELER/BANDSTRA

RANDALL VANESSA FORBES

    Plaintiff,

vs.

ST. THOMAS UNIVERSITY INC.

    Defendant.
_____/

**AFFIDAVIT OF JOHN HERNANDEZ**

STATE OF FLORIDA    )

COUNTY OF MIAMI-DADE  )

    BEFORE ME, the undersigned authority duly authorized to administer oaths and take acknowledgements, personally appeared this day John Hernandez, who after first being duly cautioned and sworn, stated:

    1.    My name is John Hernandez, I am over eighteen years of age and competent to prepare this Affidavit. My statements in this affidavit are based upon facts of which I have personal knowledge.

    2.    I am the Assistant Dean for Student Affairs at St. Thomas University School of Law ("St. Thomas"). In my capacity as Assistant Dean for Student Affairs, I also function as the primary person within the administration of the School of Law with regard to students who want to make claims for or seek special accommodations.

    3.    St. Thomas does not permit un-proctored exams at the School.

*Affidavit of John Hernandez*

---

4.     The reasons for requiring a proctor to be present, or to at least enter and exit the exam room at intervals during the course of an examination include: (a) the need to have someone present to record the start time of the examination, and to announce and enforce the end time of the examination; (b) the need to have someone present to pass out the exam materials at the beginning of the examination, and to collect the exam materials at the conclusion of the exam; (c) the need to have someone present to address any questions that a student may have during the course of the examination; (d) the need to have someone present to provide the students with instructions about the particular exam, and to make any announcements regarding the exam sent from the professor; (e) the need to have someone present to ensure that academic integrity is maintained throughout the examination, in other words, to ensure that no student is able to cheat by accessing materials or aides that are not permitted during the exam; (f) the need to have someone present in order to maintain the chain-of-custody of the exam materials, in other words, to ensure that the security of the exam itself, as well as the student's answers, and to ensure that no student copies any portion of the exam to another document for the purposes of disseminating the exam or a portion of the exam following the exam period; (g) the need to have someone present to serve as a witness for the student in the event that an allegation of misconduct is brought against the student; (h) the need to have someone present to serve as an intermediary between the School and the student during the examination; (i) the need to have someone present to address and document any problems or issues that may arise during the examination, for example if a student's exam is missing certain pages due to a clerical error, or in the event that a student taking an examination on a laptop experiences a computer malfunction; (j) the need to have someone present to help prepare students for the test settings

*Affidavit of John Hernandez*

that they will experience when they sit for the Florida Bar exam, which includes proctors frequently circulating throughout the testing area; (k) the need to have someone present to help prepare students for real-world setting that they will experience in practice, where they will be required to perform while being observed, evaluated, and sometimes judged by others during the course of their work.

5. Additionally, a significant objective of a legal education is to provide the graduate the knowledge and experience necessary to successfully undertake a bar examination. Florida and all other state bar examinations have a system in which proctors are a necessary component of the examination process. To allow any student to take un-proctored examinations would be a disservice to a student who would ultimately have to take a bar examination under proctored conditions. In other words, it would not be a reasonable accommodation because it would fundamentally alter the exam experience and undermine part of the educational process of the Juris Doctorate program.

6. During the 2006-2007 academic year, St. Thomas had in place a regulation which required students to maintain a 2.0 cumulative grade point average. St. Thomas' regulation required that any student who, at the end of semester, failed to attain a 2.0 cumulative grade point average be placed on academic probation, and be dismissed from the School of Law at the end of the next semester if, by that time, he or she failed to attain a 2.0 cumulative grade point average.

7. St. Thomas is required to be in compliance with the American Bar Association ("ABA") Standards for the Approval of Law Schools. If St. Thomas Law fails to comply with those standards it could lose its accreditation. Accreditation by the ABA is required to allow St.

*Affidavit of John Hernandez*

Thomas Law graduates to qualify to sit for the Florida Bar (and virtually all other state bar examinations). ABA Standard 303 provides that:

> (a) A law school shall have and adhere to sound academic standards, including clearly defined standards for good standing and graduation. (b) A law school shall monitor students' academic progress and achievement from the beginning of and periodically throughout their studies. (c) A law school shall not continue the enrollment of a student whose inability to do satisfactory work is sufficiently manifest so that the student's continuation in school would inculcate false hopes, constitute economic exploitation, or detrimentally affect the education of other students.

8.  St. Thomas Law's academic rules governing academic "good standing" and the dismissal and appeal process are designed to be in compliance with ABA Standard 303.

9.  The reasons for St. Thomas' regulation requiring students to maintain a 2.0 cumulative grade point average include: (a) ensuring that a student is demonstrating a minimum level of competency, comprehension, and mastery of the materials presented in the School's curriculum; (b) ensuring that the student is reasonably likely to be in a position to be able to pass the bar exam; (c) ensuring that that the student is reasonably likely to become a successful practitioner after graduation; (d) ensuring that the student is demonstrating a minimum level of reasoning ability and analytical skills; (e) ensuring that the School is represented by competent graduates practicing in the community.

10. St. Thomas' regulation requiring students to maintain a 2.0 cumulative grade point average is also in place in order to comply with the ABA's requirements that (a) a law school maintain an educational program that prepares its students for admission to the bar, and effective and responsible participation in the legal profession, (b) a law school have and adhere to sound academic standards, including clearly defined standards for good standing and graduation, (c) a law school monitor students' academic progress and achievement from the

*Affidavit of John Hernandez*

beginning of and periodically throughout their studies, and (d) a law school not continue the enrollment of a student whose inability to do satisfactory work is sufficiently manifest so that the student's continuation in school would inculcate false hopes, constitute economic exploitation, or detrimentally affect the education of other students.

11. St. Thomas Law's academic standards are consistent with virtually all other institutions of higher education. Virtually all institutions of higher education have minimum standards for academic "good standing" and dismissal procedures (similar to those of St. Thomas Law). To fail to have such standards in place would not be in conformity with the standard practices and procedures employed by institutions of higher education. Furthermore, students are also required to make "satisfactory academic progress" under Federal law to be eligible to qualify for student loans. Failure to employ these standards could make St. Thomas Law students ineligible to receive student loans.

12. During the 2006-2007 academic year, St. Thomas had in place a regulation which allowed a student who had been dismissed from the School of Law for failing to attain a 2.0 cumulative grade point average to petition the School of Law for readmission.

13. The decision about a student's petition for readmission is made by the Academic Standing Committee.

14. The committee that heard Randall Vanessa Forbes' petition for readmission, denied her petition for readmission

15. An Academic Standing Committee considering a student's petition for readmission bases its decision on a holistic review of the student's petition, taking into consideration various factors including, but not limited to: (a) the best interests of the Law

*Affidavit of John Hernandez*

School as an educational institution, including the maintaining of high standards of academic excellence and professional responsibility among members of the student body, in other words, the reasons and rational for having the 2.0 cumulative grade point average rule in the first place; (b) the committee members' evaluation of the student's reasonable prospects for success in the course of study at the Law School, and any evidence of correctable problems or disabilities that may have contributed to the student's academic performance, based upon the committee members' training and experience; (c) the student's academic record at St. Thomas; (d) the committee members' evaluation of whether allowing the student to be readmitted to St. Thomas would inculcate false hopes, constitute economic exploitation, or detrimentally affect the education of other students, based upon the committee members' training and experience; and (e) the committee members' awareness and consideration of the statistical data that students with cumulative grade point averages near or below 2.0 are not reasonably likely to be in a position to be able to pass the bar exam, based upon the committee members' training and experience.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOHN HERNANDEZ

Sworn to and subscribed before me this 20 day of ___May___, 2011.

_____
NOTARY PUBLIC

___ Personally Known
_X_ Produced Identification

Type of Identification Produced:

CARLOS HENRIQUEZ
Notary Public, State of Florida
Commission# DD906710
My comm. expires July 16, 2012