UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

07-22502-CIV-HOEVELER

RANDALL VANESSA FORBES,

    Plaintiff,

v.

ST. THOMAS UNIVERSITY, INC.,

    Defendant.
_____/

## ORDER GRANTING SUMMARY JUDGMENT

Before the Court is St. Thomas University's renewed motion for summary judgment. Briefing on the motion is complete, and the Court is fully advised in the premises. The Court held a hearing in Chambers May 24, 2011.[1] For the reasons that follow, St. Thomas's renewed motion for summary judgment is granted.

I.

The facts of this case are set forth in detail in the Court's previous order denying summary judgment. The plaintiff, Randall Vanessa Forbes, claims that St. Thomas University Law School failed

---

[1] Prior to the hearing, defendant's counsel sent emails to the plaintiff's attorney, which were not returned. On the morning of the hearing, the Court learned that the plaintiff's attorney has been suspended from the practice by the Florida Supreme Court. He did not appear for the hearing. The summary judgment motion was fully briefed, however, and the plaintiff was not prejudiced by her lawyer's absence. The result would have been the same either way.

to reasonably accommodate her alleged disability (post-traumatic stress disorder), in violation of the ADA and Section 504 of the Rehabilitation Act. St. Thomas first moved for summary judgment in October 2009. After a number of delays (including an unsuccessful mediation, substitution of plaintiff's counsel, and temporary stay of proceedings), the motion was finally heard and denied on September 30, 2010. In denying the motion, the Court concluded that St. Thomas failed to meet its burden under Rule 56 in two respects. Regarding the threshold question of whether Forbes could establish she was disabled, the Court wrote that:

> [B]ased on the present record, there are sufficient (and so far, unrebutted) facts for a jury to conclude that Forbes identified her disabilities and presented a case to St. Thomas for specific accommodations in the form of: (1) a private testing room, and (2) an exception to the 2.0 GPA requirement. The Court may eventually be persuaded that Forbes failed to seek these accommodations in the proper manner and/or never proved her disability. But right now it is impossible to reach this conclusion, because the record contains no statements from St. Thomas employees involved in denying Forbes's requests.

Order Denying Summary Judgment, p. 19, ECF No. 89, Sept. 30, 2010.[2]

Second, St. Thomas had argued that, even if the Court found

---

[2] The only piece of evidence St. Thomas presented in support of its first motion for summary judgment was the transcript of Forbes's deposition, which was actually favorable to the plaintiff. St. Thomas did not submit information about its disability policies, or any evidence illuminating why the school denied the accommodations.

material fact disputes about (1) whether Forbes was disabled, or (2) whether she properly documented her disability, St. Thomas was still entitled to summary judgment, because the school was justified in denying her accommodation request. In rejecting this argument, I wrote:

> In the present case, Forbes challenges the school's denial of her requests to take tests alone and for an exception to the minimum GPA policy. Certainly, St. Thomas need not convene a blue-ribbon panel of experts to ruminate about why students are not permitted to take exams alone. Perhaps there are too few exam rooms, or perhaps the school is concerned about cheating. More fundamentally, St. Thomas might rightly believe that offering private tests would alter an important aspect of legal education. Myriad rationales could demonstrate St. Thomas came to a justifiable conclusion. Likewise, although St. Thomas need not fundamentally re-evaluate its minimum GPA requirement each time a disabled student seeks an exemption, Forbes is at least entitled to some explanation why her request for an accommodation was denied. . . .
>
> St. Thomas cannot prevail on summary judgment unless the school explains what it took into account and how it reached its decision. In short, the Court cannot defer to St. Thomas's academic judgment without at least some evidence the school denied Forbes's requests based on a rational belief that no further accommodation could be made without imposing a hardship on the academic program.

Id. at 23-25 (footnotes omitted). In support of its renewed motion for summary judgment, St. Thomas has finally presented the evidence that was missing from its last attempt.

II.

Rule 56(c) of the Federal Rules of Civil Procedure instructs that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and any doubts about whether a trial is necessary should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

III.

In its renewed motion for summary judgment, St. Thomas presents unrebutted evidence that the school cannot be liable for violating the ADA or Rehabilitation Act, because Forbes never demonstrated she was statutorily entitled to accommodations in the first place. Prior to her academic dismissal from the law school in May 2007, Forbes never provided medical findings about her disability. After her dismissal, as part of her application for readmission, Forbes presented only a letter from her psychologist that contained no findings of medical tests conducted on Forbes, no clinical diagnosis, and no recommendations for any specific accommodations to be implemented for her disability. The letter

4

essentially recites Forbes's self-reported symptoms and notes the symptoms are consistent with a diagnosis of PTSD. This information is not enough for a student to obtain disability accommodations under St. Thomas's reasonable standards, which require a student to present reliable documentation of a disability, and which standards were explained to Forbes several times. See Hernandez Dep. 19-20, Feb. 27, 2009, ECF No. 94-1; Hernandez Aff. ¶¶ 12-13, Nov. 11, 2010, ECF No. 92; "St. Thomas University Law School Special Accommodations Guidelines" pp. 1-3, ECF No. 94-2.[3]

Second, even if Forbes had adequately documented her disability, or shown that she was *regarded* as disabled, St. Thomas has now presented unrebutted evidence that the school was justified in denying her request for readmission and/or for other relief, based on the school's "rationally justifiable conclusion that accommodating [her] would lower academic standards or otherwise unduly affect its program." Wynne v. Tufts Univ. School of Med., 976 F.2d 79, 793 (1st Cir. 1992). First, in assessing Forbes's

---

[3] There is also no evidence that Dean Hernandez or anyone else at St. Thomas *regarded* Forbes as disabled. Although Dean Hernandez eventually provided "provisional" testing accommodations to Forbes toward the end of the second semester, the record clearly shows that the dean was always skeptical of Forbes's alleged disability, as evidence by his repeated instructions that she needed to document her disability with medical evidence. The record also shows that the accommodations were obviously provisional until Forbes sorted out her personal affairs, and did not reflect the school's belief that Forbes was, in fact, disabled. Put differently, the provisional accommodations were merely an example of good faith by the school.

request for exam accommodations, Assistant Dean John Hernandez considered such factors as the integrity of the testing process, concerns about the grading curve and fairness to other students, logistical factors about proctoring exams and preventing cheating, and the school's underlying goal to "prepare the students for a real-world setting where some limited distractions may occur." Hernandez Aff. ¶¶ 15-21. Second, in assessing Forbes's application for readmission, the Academic Standing Committee considered whether she possessed the ability to succeed both inside and outside the academic environment: as both a student and as an attorney, which is the capacity for which St. Thomas Law School prepares students to work. See Student Handbook 2006-2007, pp. 26-27, ECF No. 92-2; Dykas Aff. ¶¶ 10-11, Nov. 11, 2010, ECF No. 93-1. The committee also considered the best interests of the law school as an educational institution, including the maintenance of high standards of academic excellence and professional responsibility among members of the student body. Dykas Aff. ¶ 11. In denying Forbes's petition, St. Thomas made a reasoned judgment that she fell short of these criteria, with or without reasonable accommodation. Dykas Aff. ¶ 15.[4] It is well settled that schools

---

[4] Prior to the May 24 summary judgment hearing, St. Thomas submitted supplemental affidavits of John Hernandez and Cecile Dykas, as well as affidavits from two of Forbes's law professors, Carol Zeiner and Jay Silver. The affidavits are quite similar to the ones already on the record. The Court has reviewed them, for whatever they're worth.

need only provide accommodations that they deem reasonable. See Southeastern Comm. Coll. v. Davis, 442 U.S. 297, 413 (1979) (anti-discrimination laws to not require "an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person"); Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985) (courts "should show great respect for the faculty's professional judgment."); Kaltenberger v. Ohio Coll. of Podiatric Med., 162 F.3d 432, 437 (6th Cir. 1998) (courts "should only reluctantly intervene in academic decisions") (internal citation omitted). In my previous order, I quoted a passage from Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791 (1st Cir. 1992), in which the Court of Appeals for the First Circuit explained why the academic judgment of the Tuft's Medical School, as expressed in affidavits of its faculty members, was entitled to judicial deference:

> Tufts demythologized the institutional thought processes leading to its determination that it could not deviate from its wonted format to accommodate Wynne's professed disability.... To be sure, Tufts' explanations, though plausible, are not necessarily ironclad. . . . But, the point is not whether a medical school is "right" or "wrong" in making program-related decisions. Such absolutes rarely apply in the context of subjective decisionmaking, particularly in a scholastic setting. The point is that Tufts, after undertaking a diligent assessment of the available options, felt itself obliged to make "a professional, academic judgment that [a] reasonable accommodation [was] simply not available." Wynne, 932 F.2d at 27-28. Phrased another way, Tufts decided, rationally if not inevitably,

>     that no further accommodation could be made
>     without imposing an undue (and injurious)
>     hardship on the academic program.

<u>Id.</u> at 795. Here, St. Thomas has similarly "demythologized the institutional thought process" that led to its decisions. The academic judgment of the law school, as expressed by the submissions of the associate dean, assistant dean, and law professors (and reflected by the standards in the Student Handbook and the Special Accommodations Guidelines), is entitled to deference. There being no disputed issues of material that would prevent entry of summary judgment in favor of St. Thomas, it is hereby,

**ORDERED AND ADJUDGED:** St. Thomas's renewed motion for summary judgment is granted. Summary judgment is entered in favor of St. Thomas, and against Randall Vanessa Forbes. This case is closed.

**DONE AND ORDERED** in Miami, Florida, May 24, 2011.

*/s/ Wm M. Hoeveler*
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE